**REDACTED**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BLACKBAUD, INC., et al., <br><br> Defendants. | Civil Action No. 24-03993-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WHITEPAGES, INC., et al., <br><br> Defendants. | Civil Action No. 24-03998-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HIYA, INC., et al., <br><br> Defendants. | Civil Action No. 24-04000-HB |

**REDACTED**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04017-HB |
| ACXIOM, LLC, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04073-HB |
| COMMERCIAL REAL ESTATE EXCHANGE, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04077-HB |
| CARCO GROUP INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04095-HB |
| TWILIO, INC., et al., | |
| Defendants. | |

**REDACTED**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04104-HB |
| 6SENSE INSIGHTS, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04105-HB |
| LIGHTBOX PARENT, L.P., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04106-HB |
| SEARCH QUARRY, LLC, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04110-HB |
| ENFORMION, et al., | |
| Defendants. | |

**REDACTED**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| | Civil Action No. 24-04111-HB |
| v. | |
| COSTAR GROUP, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| | Civil Action No. 24-04112-HB |
| v. | |
| ORACLE INTERNATIONAL CORPORATION, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| | Civil Action No. 24-04113-HB |
| v. | |
| RED VIOLET, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| | Civil Action No. 24-04114-HB |
| v. | |
| RE/MAX, LLC, et al., | |
| Defendants. | |

**REDACTED**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04168-HB |
| EPSILON DATA MANAGEMENT, LLC, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04171-HB |
| PEOPLE DATA LABS, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04175-HB |
| CLARITAS, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04181-HB |
| DATA AXLE, INC., et al., | |
| Defendants. | |

**REDACTED**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| | Civil Action No. 24-04182-HB |
| v. | |
| REMINE, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| | Civil Action No. 24-04184-HB |
| v. | |
| LUSHA SYSTEMS, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| | Civil Action No. 24-04217-HB |
| v. | |
| TELTECH SYSTEMS, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| | Civil Action No. 24-04227-HB |
| v. | |
| PEOPLECONNECT, INC., et al., | |
| Defendants. | |

**REDACTED**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 24-04230-HB |
| v. | |
| CORELOGIC, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 24-04233-HB |
| v. | |
| BLACK KNIGHT TECHNOLOGIES, LLC, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 24-04269-HB |
| v. | |
| THOMSON REUTERS CORPORATION, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 24-04271-HB |
| v. | |
| CHOREOGRAPH LLC, et al., | |
| Defendants. | |

**REDACTED**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>             Plaintiffs,<br><br>v.<br><br>TRANSUNION, LLC, et al.,<br><br>             Defendants. | Civil Action No. 24-04288-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>             Plaintiffs,<br><br>v.<br><br>EQUIFAX, INC., et al.,<br><br>             Defendants. | Civil Action No. 24-04298-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>             Plaintiffs,<br><br>v.<br><br>SPOKEO, INC., et al.,<br><br>             Defendants. | Civil Action No. 24-04299-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>             Plaintiffs,<br><br>v.<br><br>TELNYX LLC, et al.,<br><br>             Defendants. | Civil Action No. 24-04354-HB |

**REDACTED**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04392-HB |
| MYHERITAGE, LTD, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04442-HB |
| WILAND, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04770-HB |
| VALASSIS DIGITAL CORP., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-04447-HB |
| ATDATA, LLC, et al., | |
| Defendants. | |

**REDACTED**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PRECISELY HOLDINGS, LLC, et al.,<br><br>Defendants. | Civil Action No. 24-04571-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>OUTSIDE INTERACTIVE, INC., et al.,<br><br>Defendants. | Civil Action No. 24-04696-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE LIFETIME VALUE CO. LLC, et al.,<br><br>Defendants. | Civ. Action No. 24-04850-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST AMERICAN FINANCIAL CORPORATION et al.,<br><br>Defendants. | Civ. Action No. 24-05334-HB |

**REDACTED**

ATLAS DATA PRIVACY
CORPORATION, et al.

                Plaintiffs,

v.

LEXISNEXIS RISK DATA
MANAGEMENT, LLC, et al.

                Defendants.

Civil Action No. 24-06160-HB

 

**DEFENDANTS' CONSOLIDATED BRIEF IN OPPOSITION TO
PLAINTIFFS' CONSOLIDATED MOTION FOR REMAND**

Angelo A. Stio III
Melissa Chuderewicz
Stephanie Jonaitis
**TROUTMAN PEPPER HAMILTON
SANDERS LLP**
301 Carnegie Center, Suite 400
Princeton, New Jersey 08543
Tel. - (609) 951-4125
*Attorneys for Acxiom LLC, AtData LLC,
Carco Group Inc., CoreLogic, Inc.,
Enformion, LLC, Enformion Holdco Inc.,
Intellicorp Records, Inc., Red Violet, Inc.,
and Remine Inc.*

REDACTED

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................6

    A.    Atlas Data Privacy Corporation ...................................................6

    B.    Atlas's Agreements with New Jersey's Largest Police Unions
        that Pay Atlas for Services Provided to Union Members ...................7

    C.    Atlas's Service Terms ...................................................................10

        1.    Atlas's Service Terms Identify Atlas as a Collection
            Agent That Is Paid on a Contingency Fee Basis.....................10

        2.    Atlas's Service Terms Can Be Unilaterally Modified by
            Atlas Without Notice ................................................................12

    D.    Atlas's Aggregation of Thousands of Opt-Out Requests from
        Covered Persons and Its Issuance of Assignment Confirmations .....13

    E.    Atlas's Complaints ......................................................................15

    F.    Defendants' Notices of Removal ....................................................16

III.  LEGAL ARGUMENT..............................................................................17

    A.    This Court Has Diversity Jurisdiction Over the Remand Cases
        Under 28 U.S.C. § 1332(a)..................................................................17

        1.    Courts Apply a Multi-Factor Analysis to Decide Whether
            to Disregard a Party's Citizenship When Assessing
            Diversity..................................................................................18

        2.    Applying the Grassi and Attorneys Trust Analysis Here
            Demonstrates Atlas's Citizenship Should Be Disregarded .....22

            a)    The Assignments are Partial as the Assignors Have
                a 65% Interest in the Outcome of the Litigation. ..........22

            b)    The Assignments Represent a Contingency Fee
                Arrangement for Atlas to Act as a Collection
                Agent..............................................................................24

REDACTED

c)   Atlas and the Assignors Are Represented by the
     Same Counsel ............................................................... 27

d)   Atlas Did Not Hold an Interest in the Claims
     Before the Alleged Assignments and Has Nothing
     to Lose .......................................................................... 28

e)   The Timing of the Assignment Confirmations
     Further Shows Atlas is Not a Real Party in Interest ...... 30

3.   Atlas Fails to Apply the Proper Analysis to its Diversity
     Jurisdiction Arguments ............................................................ 32

B.   CAFA's Mass Action Provision Should be Liberally Construed
     in Favor of Federal Jurisdiction and Applied Tt the Instant
     Actions .................................................................................................. 35

1.   Exercising CAFA Jurisdiction over These Cases is Not
     Precluded by Hood, Which is Distinguishable in Every
     Respect from these Actions ..................................................... 40

2.   Even if it is Necessary to Count the Number of
     "Plaintiffs," the Court Still has CAFA Mass Action
     Jurisdiction ............................................................................. 47

IV.   CONCLUSION ............................................................................................ 51

REDACTED

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. 3M Co.*,
    65 F.4th 802 (6th Cir. 2023) ................................................................37

*Airlines Pilots Ass'n v. Boeing Co*.,
    613 F. Supp. 3d 975 (N.D. Tex. 2020) ...............................................47

*Airlines Reporting Corp. v. S & N Travel, Inc.*,
    58 F.3d 857 (2d Cir. 1995) .................................................................21

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*,
    458 U.S. 592 (1982) ............................................................................41

*Allen v. Clark*,
    22 F. Supp. 898 (S.D. Cal. 1938) ..................................................48, 49

*Atlas Data Privacy Corp. et al. v. MyHeritage Ltd., et al.*,
    No. 24-cv-4392 (HB) .............................................................................6

*Atlas Data Privacy Corp., et al. v. Thomson Reuters Corp., et al.*,
    No. 24-cv-4269 (HB) .............................................................................6

*Atlas Data Privacy, Corp., et al v. Whitepages, Inc.*,
    1:24-cv-3998-HB (all filed on February 6, 2024) .............................31

*Attorneys Trust v. Videotape Computer Prod., Inc.*,
    93 F. 3d 593 (9th Cir. 1996) .......................................................*passim*

*Auckland v. Rumsey*,
    No. CIV.A. 94-6571, 1994 U.S. Dist. LEXIS 17425 (E.D. Pa. Dec.
    7, 1994) ...............................................................................................34

*Birkins v. Seaboard Serv.*,
    96 F. Supp. 245 (D.N.J. 1950) ......................................................48, 49

*Branson Label, Inc. v. City of Branson, Mo.*,
    793 F.3d 910 (8th Cir. 2015) ..............................................................22

**REDACTED**

*Broselow v. Fisher*,
  319 F.3d 605 (3d Cir. 2003) .............................................................42, 44

*Bullard v. Burlington N. Santa Fe Ry. Co.*,
  535 F.3d 759 (7th Cir. 2008) ...................................................................51

*Cambridge Place Inv. Mgmt. v. Morgan Stanley & Co.*,
  794 F. Supp. 2d 265 (D. Mass. 2011)........................................................17

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  574 U.S. 81 (2014)....................................................................................35

*E.I. Dupont De Nemours & Co. v. Agfa NV*,
  Case No. 2:18cv326, 2018 U.S. Dist. LEXIS 220093 (E.D. Va.
  Oct. 16, 2018) .....................................................................................18, 30

*FNBN-Rescon I LLC v. Ritter*,
  Case No. 2-11-cv-1868-GMN-VCF, 2012 U.S. Dist. LEXIS
  127289 (D. Nev. Sept. 6, 2012) ...............................................................30

*Gallagher v. Johnson & Johnson Consumer Companies, Inc.*,
  169 F. Supp. 3d 598 (D.N.J. 2016).....................................................42, 47

*Grassi v. Ciba-Geigy, Ltd.*,
  894 F.2d 181 (5th Cir. 1990), *reh'g denied,* 899 F.2d 11 (5th Cir.
  1990) .................................................................................................*passim*

*Harrell & Sumner Contracting Co, Inc. v. Peabody Petersen Co.*,
  546 F.2d 1227 (5th Cir. 1977) ...........................................................21, 23

*Hood v. AU Optronics Corp.*,
  571 U.S. 161 (2014)..........................................................................*passim*

*JMTR Enters., L.L.C. v. Duchin*,
  42 F. Supp. 2d 87 (D. Mass. 1999)...........................................................29

*Kramer v Caribbean Mills, Inc.*,
  394 U.S. 823 (1969)..........................................................................*passim*

*Lawless v. Aurora Cannibis Inc.*,
  No. 20-13819, 2021 U.S. Dist. LEXIS 162535 (D.N.J. Aug. 27,
  2021) .........................................................................................................25

REDACTED

*Long John Silver's, Inc. v. Architectural Engineering Products Co.*,
    520 F. Supp. 753 (W.D. Pa. 1981)................................................................17

*Mahoney v. Emerson Elec. Co.*,
    478 F. Supp. 3d 1051 (D. Idaho 2020) .........................................................47

*W. Virginia ex rel. McGraw v. Bristol-Myers Squibb Co.*,
    No. CV 13-160, 2014 U.S. Dist. LEXIS 24026 (D.N.J. Feb. 26,
    2014) ............................................................................................................42

*Estate of McMahon v. Turner Corp.*,
    No. 05-4389, 2007 U.S. Dist. LEXIS 66754 (D.N.J. Sept. 7, 2007).................25

*Med-X Glob., LLC v. Azimuth Risk Sols., LLC*,
    No. CV 17-13086, 2018 U.S. Dist. LEXIS 144884 (D.N.J. Aug.
    27, 2018) ......................................................................................................34

*Hood ex rel. Mississippi v. Bristol-Myers Squibb Co.*,
    No. CV 13-5910, 2014 U.S. Dist. LEXIS 114000 (D.N.J. July 22,
    2014.............................................................................................................43

*Murray v. Gemplus Int'l, S.A.*,
    217 F.R.D. 362 (E.D. Pa. 2003).....................................................................26

*Nat'l Fitness Holdings, Inc. v. Grand View Corporate Ctr., LLC*,
    749 F.3d 1202 (10th Cir. 2014) ...............................................................17, 21

*Neale v. Volvo Cars of N. Am., LLC*,
    794 F.3d 353 (3d Cir. 2015) ..........................................................................41

*Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*,
    20 F.3d 987 (9th Cir. 1994) ...........................................................................30

*NPD Mgmt. & Bldg. Servs. v. Geismar N. Am., Inc.*,
    Civil Action No. 20-2739, 2021 U.S. Dist. LEXIS 217561 (E.D.
    La. Nov. 10, 2021) ...................................................................................18, 24

*Nukote of Ill. Inc. v. Clover Holdings, Inc.*,
    Case No. 3:10-CV-580-P, 2011 U.S. Dist. LEXIS 165807 (N.D.
    Tex. Mar. 8, 2011) ........................................................................................23

**REDACTED**

*Overrated Prods., Inc. v. Universal Music Grp.*,
 No. CV 19-2899, 2019 U.S. Dist. LEXIS 216107 (C.D. Cal. July
 31, 2019) ...............................................................................................28

*Pennsylvania v. Harbour Portfolio Cap., LLC*,
 No. CV 18-989, 2018 U.S. Dist. LEXIS 194566 (W.D. Pa. Nov.
 15, 2018) ...............................................................................................43

*Pennsylvania v. Porter*,
 659 F.2d 306 (3d Cir. 1981) ................................................................44

*Pension Fund-Mid Jersey Trucking Indus.-Loc. 701 v. Omni Funding
 Grp.*,
 731 F. Supp. 161 (D.N.J. 1990) ...........................................................36

*Ramirez v. Vintage Pharms., LLC*,
 852 F.3d 324 (3d Cir. 2017) ................................................................39

*Robert D. Mabe, Inc. v. OptumRX*,
 43 F.4th 307 (3d Cir. 2022) ....................................................36, 37, 39

*Rudderow v. Boston Scientific Corp.*,
 Case No. 20-0561 (CPO), 2022 U.S. Dist. LEXIS 85948 (D.N.J.
 May 11, 2022) .......................................................................................25

*Scimone v. Carnival Corp.*,
 720 F.3d (11th Cir. 2013) .....................................................................38

*Snyder v. Harris*,
 394 U.S. 332 (1969) ..............................................................................49

*Sprint Comm's Co., L.P. v. APCC Servs., Inc.*,
 554 U.S. 269 (2008) .......................................................................33, 34

*Standard Fire Ins. Co. v. Knowles*,
 568 U.S. 588 (2013) ..............................................................................51

*Suber v. Kontinental Koaches, Inc.*,
 104 F.3d 578 (3d Cir. 1997) ................................................................48

*Syms v. Castleton Indus., Inc.*,
 470 F.2d 1078 (5th Cir. 1972) .............................................................29

**REDACTED**

*Uriarte v. Outback Steakhouse*,
    No. CIV.A. 11-897 (JLL), 2011 U.S. Dist. LEXIS 101982 (D.N.J.
    Sept. 8, 2011) ................................................................................34

*Valenti v. Allstate Ins. Co.*,
    243 F. Supp. 2d 200 (M.D. Pa. 2002)..............................................26

*Vermont Agency of Nat. Res. V. U.S. ex rel. Stevens*,
    529 U.S. 765 (2000)........................................................................50

*Willis v. E. I. Dupont Denemours & Co.*,
    171 F.2d 51 (10th Cir. 1948) .....................................................48, 49

*Winn-Dixie Stores, Inc. v. E Mushroom Mktg. Corp.*,
    No. 06-0620, 2020 U.S. Dist. LEXIS 158687 (E.D. Pa. Sept. 1,
    2020) ........................................................................................36, 43

*Woodside v. Beckham*,
    216 U.S. 117 (1910)...................................................................48, 49

*Zahn v. Int'l Paper Co.*,
    414 U.S. 291 (1973).......................................................................49

**Statutes**

28 U.S.C. § 1332............................................ 3, 17, 35, 38, 42, 44, 46, 50

28 U.S.C. §1359............................................................................34

2023 N.J. Laws 113 (Lexis 2023) ...........................................................8

**REDACTED**

## I.    INTRODUCTION

Federal courts, familiar with the tactics used to manipulate subject matter jurisdiction, look at the substance of transactions and the totality of circumstances to determine whether federal jurisdiction exists.  Plaintiffs, however, ignore the well-established analysis federal courts employ to determine whether federal jurisdiction exists.  Instead, in their Consolidated Motion for Remand, Plaintiffs contend no federal jurisdiction exists here because the assignments Atlas Data Privacy Corporation ("Atlas") relies upon are not a sham, and therefore Atlas's presence as a plaintiff with Delaware citizenship defeats federal jurisdiction under both traditional diversity jurisdiction principles and the Class Action Fairness Act of 2005 ("CAFA").  Atlas is wrong on the law and the facts, and the motion should be denied on at least two independent grounds.

*First*, Atlas's citizenship is appropriately disregarded under the totality of the circumstances analysis employed by federal courts.  *See, e.g.*, *Attorneys Trust v. Videotape Computer Prod., Inc.,* 93 F. 3d 593 (9th Cir. 1996), *Grassi v. Ciba-Geigy, Ltd.,* 894 F.2d 181 (5th Cir. 1990), *reh'g denied,* 899 F.2d 11 (5th Cir. 1990).  The totality of the circumstances and the substance of the assignments demonstrate Atlas is, at best, a collection agent pursuing others' Daniel's Law claims on a contingency fee basis, which is a classic example of a litigant that is not a real party in interest.

**REDACTED**

Indeed, despite Atlas's best efforts to disguise its conduct, the alleged individuals on whose behalf Atlas purports to sue under Daniel's Law ("Covered Persons") remain the real parties in interest in the cases before this Court. Under the take-it-or-leave-it Daniel's Law Service Terms ("Service Terms") that Atlas utilized to obtain the purported assignments, it is clear that the Covered Persons retain a 65% interest in all monetary recoveries and the entire interest in any injunctive relief obtained.

Moreover, Atlas is not a real party in interest because (i) it gave no consideration for the purported assignments, and (ii) had no interest in the claims prior to obtaining the assignments – at most, one day before it began filing the lawsuits. Accordingly, Atlas has nothing to lose in these cases and only upside to gain for its venture capital shareholders from the 35% contingency fee it seeks to recover.

Further proof that Atlas is not the real party in interest is supplied by the fact that the Covered Persons, Atlas, and the individual Plaintiffs (many of whom are leaders in the New Jersey police unions) are all represented by the same counsel in the cases before this Court. At a minimum, this representation by the same counsel is indicative of a coordinated litigation strategy.

These circumstances, and other circumstances discussed below, reveal Atlas to be a collection agent—not a real party in interest. Its motion should therefore be

**REDACTED**

denied because Atlas's Delaware citizenship should be properly disregarded and diversity jurisdiction exists in these Daniel's Law cases.

**Second**, Atlas's Motion should also be denied on a separate and independent basis because federal jurisdiction exists under CAFA. By Atlas's own admission, and on the face of the complaints, each action proposes to jointly try the monetary relief claims of 100 or more persons and therefore, at a minimum, each action is a "mass" action properly removed under 28 U.S.C. § 1332(d)(11)(B)(i).[1]

Not only does the plain language of CAFA support this conclusion, but so do CAFA's legislative history and underlying policy considerations. Congress included CAFA's mass action provision to target actions, such as these, that "resemble" class actions, even when the phrase "class action" does not appear in a complaint.[2] In this way, Congress included the provision as a backstop in the law to

---

[1] Several of the Remand Defendants have asserted (and continue to assert) that CAFA jurisdiction is proper over the removed actions because they are "class" actions under CAFA whether or not they are also "mass" actions. 28 U.S.C. § 1332(d)(2). *See also* Stio Decl., Ex. 7. These are two sides of the same CAFA coin because mass actions are deemed to be class actions under CAFA and both types of actions therefore confer federal subject matter jurisdiction. *See id.* § 1332(d)(11)(A). Because Atlas has artfully tried to avoid traditional class action status, which the mass action prong is intended to prevent, we address herein only the "mass" action prong of CAFA. These Remand Defendants also argue, however, that CAFA "class action" provides grounds for removal. The CAFA "class action" arguments are addressed in individual opposition briefs to be filed in accordance with the Court's July 24, 2024 Order.

[2] In passing CAFA, Congress made clear that "the definition of 'class action' is to be interpreted liberally [and] [i]ts application should not be confined solely to

-3-

**REDACTED**

prevent plaintiffs from artfully avoiding class action status (and the corresponding relaxed jurisdictional rules for federal court) by not expressly using a class device and instead relying on mass joinder of individual claims. That is precisely what Atlas attempts to do here in each removed action. By devising and using a mass assignment mechanism, Atlas proposes to jointly try, in each action, the monetary (and other) claims of over 19,000 Covered Persons who could have pursued these claims in a traditional class action (or, of course, in their own separate, individual lawsuits not subject to CAFA). Unless the Court denies Atlas's Motion, parties like Atlas (and their purported assignors) could simply evade the relaxed jurisdictional rules for class actions set out in CAFA through a newly discovered mass assignment device—which in all material respects is indistinguishable from the use of mass joinder—precisely the sort of loophole that Congress wanted to close by including the mass action provisions of CAFA.

Atlas, relying primarily on the Supreme Court's decision in *Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014), says that its status as the only named assignee

---

lawsuits that are labeled 'class actions.'" S. Rep. No. 109-14, at 35 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 34. Rather, "lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions." *Id.* It is therefore of no moment that the New Jersey "[s]tate legislature chose to allow assignees to bring the claims of Covered Persons, and it explicitly chose to not use words such as 'class actions' or 'mass actions.'" Pls.' Br. at 22, 30.

**REDACTED**

plaintiff in each action renders CAFA's mass action provision inapplicable.[3]  But Atlas is wrong.  *Hood* was a *parens patriae* case brought by a state attorney general, and not mass assignment litigation brought by a private party.  That distinction is critical because in a *parens patriae* lawsuit, an attorney general must possess and assert a quasi-sovereign interest and claim **on behalf of the state** apart from the interests or claims of any particular private parties.[4]  *Hood*, therefore, is entirely distinguishable from a case brought by a purported mass assignee, like Atlas, that possesses no independent (let alone quasi-sovereign) interests of its own, but instead aggregates allegedly preexisting claims **on behalf of thousands of identifiable people**.

And despite the inapplicability of *Hood*, even if it were necessary to conclude that in each action there are more than 100 "plaintiffs" (as opposed to "monetary relief claims"), the Court should do so for at least two reasons.  First, in a related context, also to avoid evasion of jurisdictional rules, courts have long treated even a

---

[3] To the best of the Remand Defendants' knowledge, Atlas's efforts here are novel and these cases therefore appear to be the first time a court has been asked to consider whether thousands of purported individual assignors may avoid federal jurisdiction under CAFA by purportedly assigning their claims to, and proposing to have them tried jointly by, a single corporate assignee.

[4] Notably, while the Attorney General of New Jersey has sought to intervene in these actions, the Attorney General's request is limited to opposing Defendants' challenge to the constitutionality of Daniel's Law and is a far cry from the State bringing a *parens patriae* action.  *See* No. 1:24-cv-4105-HB, D.E. 48.

REDACTED

*single* assignee pursuing independently assigned claims for collection— as Atlas claims to do here—as akin to *multiple* plaintiffs asserting separate claims. Second, it would elevate form over substance to treat Atlas as a single plaintiff merely because it chose not to identify by name in the caption the more than 19,000 separate individuals for whom Atlas seeks to collect.

In sum, Atlas's use of mass assignments to propose aggregating and jointly trying the claims of approximately 19,000 Covered Persons in each removed action is sufficient to confer federal jurisdiction because each lawsuit is a mass action under CAFA.[5]

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Atlas Data Privacy Corporation

Atlas is a for-profit company that was originally formed to market privacy products and services to Generation Z consumers.[6] See Stio Decl., Ex. 1 at 44:24– 45:7. Atlas was originally named RoundRobin Corporation ("RoundRobin"), but

---

[5] The Remand Defendants in two cases raise fraudulent joinder as another independent ground supporting federal jurisdiction. *See Atlas Data Privacy Corp., et al. v. Thomson Reuters Corp., et al.*, No. 24-cv-4269 (HB); *Atlas Data Privacy Corp. et al. v. MyHeritage Ltd., et al.*, No. 24-cv-4392 (HB). In its Motion, Atlas argued that fraudulent joinder does not apply. *See* Pls.' Br. at 12 n.5. Because of the individualized nature of this ground for removal, the Thomson Reuters Defendants and the MyHeritage Defendants will oppose Atlas's Motion regarding fraudulent joinder in individual supplemental briefs.

[6] Atlas's shareholders are venture capital investors. *See* Stio Decl., Ex 1 at 21:20– 23:3; 23:4–24; 22:23–23:3.

**REDACTED**

formally became known as Atlas Data Privacy Corporation on January 10, 2024, approximately one month before it filed 142 Daniel's Law Complaints in New Jersey state court.  Stio Decl., Ex. 2.  Two days later, on January 12, 2024, Atlas registered to do business in the State of New Jersey, (Stio Decl., Ex. 3), ███████████████

███████████████████████████████  *See* Stio Decl., Ex. 4.

**B.    Atlas's Agreements with New Jersey's Largest Police Unions that Pay Atlas for Services Provided to Union Members**

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████.  Stio Decl., Ex. 4.  The PBA is the "largest law enforcement union in the State [of New Jersey]," with over 31,000 members.  *See* Plaintiffs' Consolidated    Memorandum    of    Law    ("Pls.' Br.") at 2;    *see    also* https://www.njspba.com/news/Read.aspx?id=1436 (last visited on Sept. 6, 2024).

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████.  Stio Decl., Ex. 4.

████████████████████████████████████████

████████████████████████████████████████

**REDACTED**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████.

████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████. Stio Decl., Ex. 4 at §11.  ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████. Later, on April 5, 2023, Colligan sent a message to PBA members encouraging them to register for Atlas's services. *See* Stio Decl., Ex. 8 ("The time is now to sign up for protection under Daniel's Law

**REDACTED**

through Atlas Privacy.  If you don't know about either, please speak to your State

Delegate ASAP.").



███. Stio Decl., Ex. 5; *see also* Ex. 6.[7]  These organizations represent some of the

largest law enforcement unions in New Jersey.[8]

████████████████████████, Atlas provided the

Covered Persons with Platform services consisting of data broker scanning and

monitoring, web form opt-outs, an email platform, and access to identity defense

services, as recognized by Section 3 of the Service Terms.  *See, e.g.,* Stio Decl.,

Ex. 12 at §3.  ████████████████████████

████████████████.  *See* Stio Decl., Ex. 4–6.

---

[7] ████████████████████████
████████████████████  Mr. Sullivan is a named plaintiff in
fifty-nine (59) Daniel's Law complaints before this Court.  *See generally* Daniel's
Law Complaints.

[8] The STFA is the union for members of the New Jersey State Troopers and is
comprised of more than 1,900 members.  *See* https://www.stfa.org/about/about-us
(last visited Sept. 6, 2024).  Local 105 is New Jersey's largest union for police
officers who work in correctional facilities.  *See* https://www.njspotlightnews.org
/2023/12/ 4000-police-officers-benefit-from-union-agreement/ (last visited Aug. 27,
2024).

**REDACTED**

C.    **Atlas's Service Terms**

1.    **Atlas's Service Terms Identify Atlas as a Collection Agent That Is Paid on a Contingency Fee Basis**

As a mandatory condition for use of the Platform, Atlas required all Covered Persons to accept its Service Terms.  ███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████. *See* Stio Decl., Ex. 9–12.

Most relevant here is Section 4 of the Service Terms.  It provides for Atlas to pursue claims to recover liquidated damages and other remedies on behalf of Covered Persons, through the pursuit of "Formal Enforcement Actions."  Stio Decl., Ex. 12 at §4(e). Unlike the Platform services Atlas provides, enforcement actions are not funded by the police unions.  Instead, Atlas receives a contingency fee equal to 35% of any judgment or settlement obtained.  *Id*. at §§4–5.

Under Section 4(e)(i), titled "Actions where you are a plaintiff," the Service Terms recognize that when "third parties fail to honor your opt-out requests under the Act, [Atlas] may facilitate introductions to counsel who may be able to provide you and/or your eligible family members with the opportunity to participate individually, collectively, or as putative class members in formal legal action(s) to enforce your and their rights and recover damages and other relief."  *Id*. at §4(e)(i). In exchange for the "introductions to counsel" and the "opportunity to participate,"

**REDACTED**

Atlas receives a "Service Fee," which is equal to 35% of the "gross amounts of recovery" from any judgment or settlement obtained in any action where the Covered Person pursues the claim individually. *Id.* at §4(e)(i) and §5. Under Section 4(e)(i), the Covered Person continues to hold a 65% interest in the claim and the Covered Person is responsible for the payment of attorneys' fees and costs associated with any judgment or settlement, if attorneys' fees and costs are not awarded by the Court or obtained through a settlement. *Id.* at §4(e)(i).

Under Section 4(e)(ii) of the Service Terms, Atlas also designed a mechanism to allow for the mass assignment of claims to pursue the claims on behalf of the Covered Persons as a collection agent. Section 4(e)(ii) provides for Atlas to aggregate and prosecute claims belonging to the Covered Persons. *Id.* at §4(e)(ii). This is done by Atlas sending each Covered Person a written notice ("Assignment Confirmation"), "which shall both trigger and confirm [the account holder's] legal assignment to Atlas or an affiliate of Atlas … of [the Covered Person's] right to bring civil enforcement actions for violation of [the Covered Person's] rights under the Act in connection with one or more of your opt-out requests . . ." *Id.* at §4(e)(ii). Section 4(e)(ii) states that upon receipt of an Assignment Confirmation, the Covered Person is deemed "to have irrevocably assigned to [Atlas] all of your rights to bring a claim (and seek damages, other legal remedies, and fees, costs, and litigation expenses) for violations of your rights under the Act with respect to the opt-out

-11-

REDACTED

requests covered by the Assignment Confirmation." *Id.* Moreover, if additional written documentation is needed to perfect the assignment, Section 4(e)(ii) appoints Atlas as each Covered Person's "attorney-in-fact to execute any such further written assignments or confirmation on [the Atlas account holder's] behalf, and such appointment is coupled with an interest." *Id.*[9]

In a manner virtually identical to individual enforcement actions covered by Section 4(e)(i) of the Service Terms, the Covered Person continues to retain a significant interest in the claims Atlas pursues. Section 4(e)(ii) makes clear that each Covered Person retains a 65% interest in the "net amounts" of any settlement or judgment where Atlas or its affiliate is a plaintiff. *Id.* The Covered Persons—not Atlas—are responsible for the payment of legal fees and costs associated with enforcement actions. These attorneys' fees and costs are deducted from each Covered Person's 65% interest in any judgment or settlement, to the extent attorneys' fees and costs are not otherwise awarded. *Id.*

### 2.   Atlas's Service Terms Can Be Unilaterally Modified by Atlas Without Notice

The Service Terms permit Atlas to make modifications without providing any notice to the Covered Persons. *See, e.g.,* Stio Decl., Ex. 12 at §12 ("Your continued

---

[9] Any reference to assignments or assignors herein is not an admission that the assignments are valid or proper, and Defendants reserve all rights to challenge these purported assignments at a later date.

-12-

**REDACTED**

use of the Website or the Services after a change or update has been made will constitute your acceptance of revised Terms."). Mr. Adkisson confirmed at Atlas's jurisdictional Rule 30(b)(6) deposition that, if changes occurred, no universal notification was provided to the Covered Persons. Stio Decl., Ex. 1 at 121:16–122:21. The only notice of a change that a Covered Person would receive is if the Covered Person attempted to "re-engage" with Atlas's Platform (i.e. login to) and a clickwrap was included as part of that process. *Id.* at 121:20–122:2.

### D. Atlas's Aggregation of Thousands of Opt-Out Requests from Covered Persons and Its Issuance of Assignment Confirmations

After entering into agreements with the police unions (i.e. the PBA, STFA and Local 105), and then registering Covered Persons for its services, Atlas moved forward with its plan to pursue collection actions on a contingency fee basis, presumably to receive a return on investment for its venture capital shareholders. This plan became apparent through several features of the events that unfolded in the months leading up to the collection actions.

First, Atlas delayed sending the Covered Person's requests for addresses and phone numbers to be removed ("Opt-Out Requests") for months, instead compiling "batches" to send during the holidays when companies were not fully staffed.

**REDACTED**

████████████████████████████████████████████ Atlas

spent many months batching notices (i.e. quietly aggregating Opt-Out Requests) and then, when the 2023 winter holidays and the New Year arrived, emailed millions of Opt-Out Requests to at least 142 businesses using a form email sent from an @atlasmail.com email domain.  *See, e.g.,* Compl. at ¶52, No. 1:24-cv-04110-HB, ECF No. 1 ("Enformion Compl.") (alleging Opt-Out Requests were sent on December 21, 2023); Compl. at ¶50, No. 1:24-cv-04113-HB ("Red Violet Complaint") (alleging Opt-Out Requests were sent on Christmas Day, December 25, 2023); Compl. at ¶51, No. 1:24-cv-04107-HB ("Acxiom Complaint") (alleging Opt-Out Requests sent on December 30, 2023); Compl. at ¶51, 1:24-cv-4256-HB ("Zillow Compl.") (alleging Opt-Out Requests were sent on New Year's Eve, December 31, 2023); Compl. at ¶51, No. 1:24-cv-4105-HB ("Lightbox Compl.") (alleging Opt-Out Requests were sent on New Year's Day, January 1, 2024); Compl. at ¶52, No. 1:24-cv-04077-HB ("Carco Compl.") (alleging Opt-Out Requests were sent on January 4, 2024).[10]

Second, Atlas purported to complete the assignment of Covered Persons' claims only on the eve of filing suit.  On February 5, 2024—████████████████

████████████████████████████████████████████

---

[10] Importantly, Defendants do not concede (and in fact dispute) that Atlas's delivery of the Opt-Out Requests complied with Daniel's Law.

**REDACTED**

████████████████████████████████████████████████████

████████████████████████████████████████████████████.[11]

*See, e.g.,* Stio Decl., Exhs. 11-13.  The Assignment Confirmations did not require an acknowledgement of receipt or any acceptance by the Covered Person.  Stio Decl., Ex. 1 at 77:18–78:18; 120:15–121:12; *see also* Ex. 14.

Third, just one day after sending the Assignment Confirmations and two days after modifying the Service Terms, Atlas began filing complaints against the defendants in the Superior Court of New Jersey.  *See, e.g.,* Stio Decl., Ex. 7.

### E.    Atlas's Complaints

In the Daniel's Law Complaints, Atlas alleges it is an assignee of approximately 19,000 Covered Persons and can pursue Daniel's Law claims asserting the rights of these assignees.  *See, e.g.,* Compl. at ¶26, No. 1:24-cv-03993-HB ("Blackbaud Compl.").  Atlas alleges it sent Opt-Out Requests starting in December 2023 and that the defendants failed to respond to the requests within the ten (10) business day period required under Daniel's Law.  *See, e.g., id*. at ¶53.  The Daniel's Law Complaints also assert claims by individuals (union officials and

---

[11] Atlas sent approximately fifty (50) Assignment Confirmations to Covered Persons after the Daniel's Law Complaints were filed.  Stio Decl., Ex. 1 at 79:23–80:3; *see also* Ex. 15.

**REDACTED**

others) who purportedly did not assign their claims to Atlas and allegedly sent Opt-Out Requests that were not honored.  *See, e.g., id.* at ¶¶52–53.

In the Daniel's Law Complaints, Atlas seeks, among other things, liquidated damages of $1,000 per violation, attorneys' fees and costs, and injunctive relief requiring the defendants to remove the "Covered Persons' protected information wherever disclosed."  *See, e.g., id.*, Wherefore clause.

### F.    Defendants' Notices of Removal

In 72 of the cases filed by Atlas, the defendants removed the Daniel's Law Complaints from the Superior Court of New Jersey to the United States District Court for the District of New Jersey.  *See, e.g.*, Stio Decl., Ex. 7.  The primary grounds for removal included diversity of citizenship and removal under CAFA's mass action provision.  *Id.*

In response to the Notices of Removal, Atlas filed the Consolidated Motion for Remand against the defendants in thirty-nine (39) cases (the "Remand Defendants").  *See* Pls.' Br. at 11; *see also* Stio. Decl., Ex. 7.  Atlas does not challenge the timing of the Notices of Removal (Stio Decl., Ex. 16 at 53:18–55:1), that the amount in controversy requirement for diversity jurisdiction or CAFA jurisdiction is met, or the number of Covered Persons who are seeking recovery.  *See generally* Pls.' Br.

**REDACTED**

## III.  LEGAL ARGUMENT

### A.  This Court Has Diversity Jurisdiction Over the Remand Cases Under 28 U.S.C. § 1332(a)

In 36 of the cases subject to the Motion, the Remand Defendants properly removed their cases under 28 U.S.C. § 1332(a) (the "Diversity Removing Defendants").  *See, e.g.,* Notice of Removal, No. 1:24-cv-04111-HB, ECF No. 19 at 3 ("Costar Amended NOR"); *see also* Stio Decl., Ex. 7.  The Diversity Removing Defendants each established in their Notices of Removal that (1) the amount in controversy in their case well exceeds $75,000 and (2) the underlying dispute is between citizens of different states, because Atlas's citizenship should be disregarded.  *See, e.g.,* Costar Amended NOR, ECF No. 19 at 10–20.  Only the second prong of removal is disputed.

Although the Diversity Removing Defendants and Atlas are citizens of Delaware, removal is proper because the Diversity Removing Defendants have established that Atlas is not a real party in interest, and therefore, its citizenship for purposes of establishing diversity jurisdiction should be disregarded under well-developed federal law.  *See, e.g., Attorneys Trust.,* 93 F. 3d 593, *Grassi,* 894 F.2d 181, and numerous other federal cases.[12]

---

[12] *See also Nat'l Fitness Holdings, Inc. v. Grand View Corporate Ctr., LLC*, 749 F.3d 1202, 1205–1206 (10th Cir. 2014); *Long John Silver's, Inc. v. Architectural Engineering Products Co.,* 520 F. Supp. 753, 756–57 (W.D. Pa. 1981); *Cambridge Place Inv. Mgmt. v. Morgan Stanley & Co.,* 794 F. Supp. 2d 265, 268 (D. Mass.

**REDACTED**

In response, Atlas contends that the exception allowing a court to disregard the citizenship of a party for purposes of diversity jurisdiction is "narrow" and only available if there are transactions/assignments that are a sham or collusive "for the purpose of manipulating this Court's jurisdiction." Pls.' Br. at 16. Atlas also claims that the assignments it received are "complete and exclusive," and, therefore, it is the real party in interest. *Id.* at 20. Both of those contentions fail.

### 1.  Courts Apply a Multi-Factor Analysis to Decide Whether to Disregard a Party's Citizenship When Assessing Diversity

Contrary to Atlas's argument that the Court should focus on whether the assignments reveal a collusive motive (*see* Pls.' Br. at 14), federal courts examining diversity jurisdiction look at "all of the facts and circumstances." *Attorneys Trust*, 93 F.3d at 600. As the Ninth Circuit recognized, "there is no reason to give motive controlling weight in every case" because "[t]he objective fact of who really is the party in interest is the most important thing to be determined." *Id.* at 596.

In analyzing all facts and circumstances, including the substantive characteristics of an assignment, courts consider a number of non-exclusive factors to determine the real party in interest whose citizenship must be considered. The

---

2011); *E.I. Dupont De Nemours & Co. v. Agfa NV*, Case No. 2:18cv326, 2018 U.S. Dist. LEXIS 220093, *52 (E.D. Va. Oct. 16, 2018); *NPD Mgmt. & Bldg. Servs. v. Geismar N. Am., Inc.*, Civil Action No. 20-2739, 2021 U.S. Dist. LEXIS 217561, *9–10 (E.D. La. Nov. 10, 2021).

**REDACTED**

Fifth Circuit's decision in *Grassi* highlights factors federal courts consider when examining the totality of the circumstances to determine the real party in interest for purposes of diversity jurisdiction.  894 F.2d at 182–83.  In that case, the District Court denied a motion for remand, and the Fifth Circuit affirmed.  *Id.*  In so affirming, the Fifth Circuit identified six features of the assignment that relevant to determining diversity jurisdiction: (i) the comparative size of the interest assigned; (ii) whether the assignee held any interest in the litigation before the assignment; (iii) whether the assignor and assignee are represented by the same attorneys; (iv) the timing of the assignment and whether it occurred shortly before the litigation commenced; (v) whether the assignment represents what is essentially a contingent fee arrangement for collection work; and (vi) whether there is a strong likelihood of prejudice against the defendant.  *Id.* at 186.

Following *Grassi,* the Ninth Circuit used a similar multi-factor approach to determine whether an assignee's citizenship should be disregarded for purposes of determining diversity jurisdiction.  *See Attorneys Trust*, 93 F.3d at 593.  There, a Chinese corporation claimed defendant Videotape Computer Products, a California corporation, was indebted to it for the price of video tape housings.  *Id.* at 594.  The Chinese corporation, however, assigned its claim to plaintiff Attorneys Trust (a California citizen) for purposes of collecting the debt and Attorneys Trust was to receive "12 percent for its trouble."  *Id.*

-19-

**REDACTED**

Attorneys Trust ultimately brought the collection action against the defendant in federal court based on diversity jurisdiction. *Id.* The defendant proceeded to file a cross-complaint against the Chinese corporation, bringing it into the case. *Id.* The same attorney representing plaintiff Attorneys Trust represented the Chinese corporation. *Id.* After Attorneys Trust was unsuccessful with its claims and an adverse judgment was entered against the Chinese corporation, Attorneys Trust, and the Chinese corporation appealed, claiming the District Court did not have diversity jurisdiction over the case because Attorneys Trust, the assignee of the claim, and defendant were both California residents. *Id.*

The Ninth Circuit ultimately affirmed the District Court's judgment and in so doing, identified the features of the assignment that were relevant to diversity jurisdiction. It held that the "objective fact of who really is the party in interest is the most important thing to be determined." *Id.* at 596. The *Attorneys Trust* court made this determination by weighing the following factors: (i) whether the assignee had a prior interest in the claim; (ii) was the assignment timed to coincide with commencement of litigation; (iii) was any consideration given by the assignee; (iv) was the assignment partial or complete; and (v) were the parties represented by the same counsel. *Id.* at 599. The Ninth Circuit observed that every single case it could find involving "an assignment for collection (however framed or disguised)" revealed the assignors, not the collector-assignees, to be the real parties in interest.

**REDACTED**

*Id.* at 597.  As part of its discussion, the *Attorneys Trust* court cited several cases where, like here, the assignee was not a real party in interest because it was a "mere conduit for a remedy owing to others," *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 859, 861–62 (2d Cir. 1995), and the assigned interest was made for legal and tactical reasons, *Harrell & Sumner Contracting Co, Inc. v. Peabody Petersen Co.*, 546 F.2d 1227, 1228–29 (5th Cir. 1977).

After applying its multi-factor approach, the Ninth Circuit held that Attorneys Trust's California citizenship was properly disregarded because "[t]here can be no doubt that the assignment was solely for collection and that [Attorneys Trust] was simply to get a 12% contingent fee for its trouble." *Id.* at 598.  The Court observed that "[the assignee] had no prior interest in the claim, and the assignment was timed to coincide with the commencement of litigation"; "the assignee gave no consideration [for the assignment] other than its own collection work for a contingent fee, which could have been effectuated without an assignment"; the assignment was partial because "88% was to go to the assignor"; and "the same counsel represented both the assignor and the assignee." *Id.* at 599.

*Grassi* and *Attorneys Trust* are not alone in the multi-factor approach to be applied to all facts and circumstances to determine the real party in interest as part of a diversity jurisdiction analysis.  Numerous other courts have followed similar approaches in denying motions to remand.  *See, e.g., Nat'l Fitness Holdings, Inc. v.*

REDACTED

*Grand View Corp. Ctr., LLC*, 749 F.3d 1202, 1205–06 (10th Cir. 2014) (applying seven-factor analysis in evaluating totality of circumstances); *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 916–17 & n.5 (8th Cir. 2015) (agreeing factors are "a helpful guide" and noting all factual circumstances should be considered). As set forth below, the factors show that Atlas is not a real party in interest.[13]

> ### 2. Applying the *Grassi* and *Attorneys Trust* Analysis Here Demonstrates Atlas's Citizenship Should Be Disregarded

Application of the *Grassi* and *Attorneys Trust* factors here demonstrates that Atlas is not a real party in interest and therefore its citizenship should be disregarded for purposes of subject matter jurisdiction.

> #### a) The Assignments are Partial as the Assignors Have a 65% Interest in the Outcome of the Litigation.

There is no question that the assignments Atlas received from Covered Persons are not "complete and absolute" (*Attorneys Trust*, 93 F. 3d at 597) because the Covered Persons, who allegedly assigned their claims to Atlas (the "Assignors"), continue to retain substantial – indeed, majority – interests in the litigations. The Court need look no further than the language in Section 4(e)(ii) of the Service Terms, which makes clear that the Assignors retain a 65% interest in any judgment or recovery obtained. *See* Stio Decl., Ex. 12 at §4(e)(ii). Under *Kramer v. Caribbean*

---

[13] Additional district courts have adopted the multi-factor approach. *See supra* at n.11.

**REDACTED**

*Mills, Inc.*, which Plaintiffs cite in their Memorandum of Law, when an assignor continues to retain some interest in the subject matter of a litigation, the assignment is not complete and absolute. *See Kramer v Caribbean Mills, Inc.*, 394 U.S. 823, 828, n.9 (1969) (defining complete assignments as those "where the transfer of a claim is absolute, with the transferor retaining no interest in the subject matter").

Atlas ignores the 65% interest that the Assignors retain and argues the assignments are "complete" because the Assignors have "relinquished their rights to bring claims under Daniel's Law to Atlas." Pls.' Br. at 20. But relinquishing rights to bring claims is not what makes an assignment complete and absolute; if it were, nearly every assignment would be a complete one. In addition to *Kramer*, *Attorneys Trust* shows the error of Plaintiffs' assertion. In *Attorneys Trust*, the Ninth Circuit recognized an assignment was not complete and absolute where the assignor retained an 88% interest in any recovery. *See Attorneys Trust*, 93 F.3d at 593.

Consistent with *Kramer* and *Attorneys Trust,* numerous courts have found that when an assignor retains an interest in the subject matter of the litigation, the assignment is not complete and absolute, and the assignee is not seen as the real party in interest. *See, e.g., Sumner Contracting Co, Inc. v. Peabody Petersen Co.*, 546 F.2d 1227, 1228–29 (5th Cir. 1977) (assignment to plaintiff of 50% interest in net proceeds of recovery from litigation in return for no consideration did not make plaintiff's citizenship relevant to diversity jurisdiction); *Nukote of Ill. Inc. v. Clover*

**REDACTED**

*Holdings, Inc.*, Case No. 3:10-CV-580-P, 2011 U.S. Dist. LEXIS 165807, *19 (N.D. Tex. Mar. 8, 2011) (financial interest the assignor retained in the outcome of the litigation made the assignment incomplete); *NPD Mgmt. & Bldg. Serv. V. Geismar N. Am., Inc*., Case No. 20-2739, 2021 U.S. Dist. LEXIS 217561, *5 (E.D. La. Nov. 10, 2021) (*quoting Kramer*, 394 U.S. at 828, n.9) (because the assignee was required to remit back the full recovery less a service fee, the "remittance language makes clear that the transfer was not actually 'absolute, *with the transferor retaining no interest in the subject matter*'") (emphasis in original).

The totality of the circumstances here reveals the alleged Assignors retain a substantial interest in the action by retaining entitlement to a significant majority share of any monetary recovery and the entire interest in the requested "injunctive relief," as they are the only party to benefit from that relief and they are the only parties that are harmed from the risk of disclosure of the information protected under Daniel's Law.  Indeed, Daniel's Law protects the Assignors' personal information, not Atlas's information.  Accordingly, the Assignors are the real party in interest in the actions because the injunctive relief sought benefits them and not Atlas.

> **b)** **The Assignments Represent a Contingency Fee Arrangement for Atlas to Act as a Collection Agent**

In these cases, Atlas is acting as a collection agent in return for a contingency fee—a textbook case where assignors are recognized as the real parties in interest. *See Attorneys Trust*, 93 F.3d at 597.  Under Section 4(e)(ii) of the Service Terms, if

**REDACTED**

Atlas pursues an action to collect remedies under Daniel's Law it must remit back to the Assignors 65% of any monetary judgment or settlement. Stio Decl., Ex. 12 at §4(e)(ii). That is a classic contingency fee arrangement for pursuing an action to collect damages. *Rudderow v. Boston Scientific Corp.*, Case No. 20-0561 (CPO), 2022 U.S. Dist. LEXIS 85948, *12 (D.N.J. May 11, 2022) (citing *Estate of McMahon v. Turner Corp.*, No. 05-4389, 2007 U.S. Dist. LEXIS 66754, *3 (D.N.J. Sept. 7, 2007) ("Courts have found exceptional lawyering warranting a one-third recovery where the case presented significant obstacles and success appeared unlikely[.]")); *Lawless v. Aurora Cannibis Inc.*, No. 20-13819, 2021 U.S. Dist. LEXIS 162535, *5 (D.N.J. Aug. 27, 2021) (opining that a contingency fee of not-to-exceed one-third of a recovery is "a typical and reasonable fee" for lead counsel in a class action lawsuit).

Moreover, Atlas cannot dispute that the contingency fee it receives is solely for pursuing a collection action. ███████████████████████████████ ████████████████████████████████████████████████████████████. Stio Decl., Ex. 7–9.[14] The 35% recovery deduction or "Service Fee," imposed

---

[14] Atlas cannot offer any alternative interpretation about the 65%/35% contingency fee arrangement in any reply. During the Rule 30(b)(6) deposition Atlas's corporate designee, Mr. Adkisson, repeatedly refused to answer questions about the basis for the 65%/35% contingency fee arrangement, on the basis that the information was privileged. Stio Decl., Ex. 1 at 251:11–18; 108:3–22 (refusing to answer questions about the 65%/35% contingency fee on the basis that "the answer to get into any more specificity would take me into areas of privilege."). Having testified under

REDACTED

separately on the Assignors under the Service Terms, can be understood as nothing other than a classic contingency fee.

Furthermore, regardless of whether Atlas obtains an assignment from a Covered Person, or a Covered Person pursues an individual action, Atlas's contingency fee remains the same, and Atlas continues to get paid by the police unions for the Platform services it provides.  *Compare* Stio Cert., Ex. 12 at §4(e)(i) with §4(e)(ii) (demonstrating Atlas receives a contingency fee of 35% for an individual action or an enforcement action where it is an assignee).  The fact that the same contingency applies to (1) Covered Persons who pursue individual actions and (2) Covered Persons who assign their claims to Atlas demonstrates that Atlas is a collection agent working for a contingency fee.

---

oath that the information was privileged, Atlas cannot now offer any additional context on this issue without belatedly waiving the privilege it asserted at the deposition, which would be prejudicial to the Remand Defendants and potentially warrant re-opening of the deposition and leave to file a sur-reply.  *See Murray v. Gemplus Int'l, S.A.*, 217 F.R.D. 362, 367 (E.D. Pa. 2003) (reasoning that "the attorney-client privilege is a shield used to protect communications, not a sword wielded to gain an advantage in litigation"); *Valenti v. Allstate Ins. Co.*, 243 F. Supp. 2d 200, 220 (M.D. Pa. 2002) ("Counsel is reminded that privilege is a shield not a sword. It should be used to protect 'privileged' matter, not to deny opposing counsel relevant and pertinent evidence.").

REDACTED

### c)    Atlas and the Assignors Are Represented by the Same Counsel

In the diversity jurisdiction analyses under *Attorneys Trust* and *Grassi*, the Ninth and Fifth Circuits also considered whether the assignor and assignee were represented by the same counsel. *Attorneys Trust*, 93 F.3d at 595; *Grassi*, 894 F.2d at 185. Here, there can be no dispute that Atlas and the Assignors are represented by the same counsel. Mr. Adkisson testified that some combination of Morgan & Morgan, PEM Law, and Boies Schiller represents Atlas and every individual Plaintiff in the Daniel's Law cases. Stio Decl., Ex. 1 at 112:16–113:12. ███

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ Separately, these same three law firms seek to represent thousands of the alleged assignors in a class action against LexisNexis Risk Data Management, LLC (also a defendant in the Daniel's Law cases) that also is before this Court. *See John Doe-1, et al v. LexisNexis Risk Data Management, LLC, et al*; Case No. 1:24-cv-4566. This simultaneous representation of Atlas, the individual Plaintiffs, and the Assignors by the same attorneys, at a minimum, demonstrates coordination with regard to the pursuit of the claims in each case, and thus underscores that the Assignors are the real parties in interest.

-27-

REDACTED

### d)    Atlas Did Not Hold an Interest in the Claims Before the Alleged Assignments and Has Nothing to Lose

*Attorneys Trust* also examined whether an assignee had any interest in the underlying claims before the assignment occurred as part of determining the real party in interest. 93 F.3d at 597. As the Ninth Circuit explained, an examination of the totality of the circumstances includes whether an assignee has something to lose in the litigation because it had pre-existing rights. *Id.* at 595.

Here, the evidence shows that Atlas is a financial opportunist with only upside to gain, and nothing to lose, from these litigations. Daniel's Law was enacted to provide New Jersey judges, law enforcement officers, and prosecutors, and their eligible family members, with the right to prevent the disclosure of their home addresses and unpublished telephone numbers. *See Carco* Compl. at ¶1. Atlas is not, and never claims to be, a Covered Person under Daniel's Law. Stio Decl., Ex. 1 at 119:15–19. Its only basis for asserting these claims is as collection agent via the purported assignments, most of which were obtained on February 5, 2024, one day before commencing the litigations. *See Blackbaud* Compl. at ¶1 ("Atlas Data Privacy Corporation ('Atlas') as the assignee of individuals who are Covered Persons under Daniel's Law").

Further evidence that Atlas has nothing to lose is the fact that Atlas gave no consideration for the assignments it purportedly obtained from the Assignors. The lack of consideration further confirms that Atlas is not a real party in interest. *See*

-28-

REDACTED

*Overrated Prods., Inc. v. Universal Music Grp.*, No. CV 19-2899, 2019 U.S. Dist. LEXIS 216107, *18 (C.D. Cal. July 31, 2019) (denying remand where there was no consideration for assignment of contract to non-diverse entity); *Attorneys Trust*, 93 F.3d at 597 (denying remand based on factors that included no "consideration given by the assignee" for the assignment); *JMTR Enters., L.L.C. v. Duchin*, 42 F. Supp. 2d 87, 92 (D. Mass. 1999) (identifying facts characteristic of an attempt to destroy diversity as including "lack of consideration paid by the assignee to the assignor"); *Syms v. Castleton Indus., Inc.,* 470 F.2d 1078, 1090 (5th Cir. 1972) (identifying "no consideration given for assignment" as a factor).

Moreover, the identical terms applicable to (1) Covered Persons who pursue individual actions and (2) Covered Persons who assign their claims to Atlas, *compare* Stio Cert., Ex. 12 at §4(e)(i) with §4(e)(ii), further demonstrates that the Assignors (not Atlas) remain the real parties in interest. If a Covered Person using Atlas's Platform services pursues an individual claim (as have the named plaintiffs in these cases), it is undisputedly the citizenship of that Covered Person that determines diversity jurisdiction. Yet, Atlas's position is that the citizenship of the Assignors, otherwise identically situated to the named plaintiffs, is irrelevant for purposes of diversity jurisdiction—and only Atlas's citizenship matters. But, because "the main focus [of the diversity analysis] is usually upon the reality of the

**REDACTED**

transaction itself," *Attorneys Trust*, 93 F.3d at 597, Atlas's efforts to exalt form over substance cannot succeed in avoiding federal jurisdiction.

> **e)** **The Timing of the Assignment Confirmations Further Shows Atlas is Not a Real Party in Interest**

Courts also have recognized that "[a]n assignment 'made shortly before or to coincide with the filing of a complaint' is indicative of an improper assignment to create or destroy jurisdiction." *See E.I. Dupont*, Case No. 2:18cv326, 2018 U.S. Dist. LEXIS 220093, *62 (quoting *FNBN-Rescon I LLC v. Ritter*, Case No. 2-11-cv-1868-GMN-VCF, 2012 U.S. Dist. LEXIS 127289, *6–7 (D. Nev. Sept. 6, 2012)); *Kramer,* 394 U.S. at 824 (noting that assignee filed the complaint "soon" after the Panamanian corporation's assignment); *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 993 (9th Cir. 1994) (an assignment suggested collusion when made three days before filing of suit).

Here, the time between the alleged assignments and the filing of the complaints further confirms that the alleged assignee's citizenship should be disregarded for purposes of diversity jurisdiction.  In this case, Atlas produced spreadsheets to each Remand Defendant showing the dates it allegedly sent Assignment Confirmations to Covered Persons. *See, e.g.,* Stio Decl., Ex. 13. ██████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

**REDACTED**

██████████████████████.[15]  Indeed, approximately 50 Assignment Confirmations were sent *after* complaints had been filed.  Stio Decl., Ex. 1 at 79:16–80:3; 190:22–191:2.  Atlas has no legitimate explanation for the timing of the Assignment Confirmations in relation to the commencement of complaint filings in New Jersey state court.

In sum, when the *Grassi* and *Attorneys Trust* multi-factor analyses are applied to the totality of the circumstances presented here, they reveal that Atlas is not a real party in interest.  Atlas is a mere collection agent—one that paid no consideration for the assignments, had no prior interest in the subject matter of the claims before the assignments, has nothing to lose from the litigations, and serves only as a collection-agency conduit for the police unions and its members in asserting Daniel's Law rights belonging to the Covered Persons.  These facts and the other factors outlined above all demonstrate the Covered Persons are the real parties in

---

15 ████████████████████████████████████████████████████
████████████████████████████████████████████████████.
*See* Stio Decl., Ex. 13.  One day later, on February 6, 2024, the complaint was filed.
*See* Enformion Compl. at ¶52.  See also *Atlas Data Privacy Corp., et al v. 411.Info
Corp.*, L-000-229-24 (Morris); *Atlas Data Privacy Corp., et al v. Black Knight
Technologies, LLC, Black Knight, Inc.*, 1:24-cv-4233-HB; *Atlas Data Privacy
Corp., et al v. Melissa Data Corp.*, 1:24-cv-4292-HB; *Atlas Data Privacy Corp., et
al v. PIPL, Inc.*, L-000-481-24 (Monmouth); *Atlas Data Privacy Corp., et al v.
Spokeo, Inc.*, 1:24-cv-4299-HB; *Atlas Data Privacy, Corp., et al v. Whitepages, Inc.*,
1:24-cv-3998-HB (all filed on February 6, 2024).

REDACTED

interest in this case and Atlas's citizenship should be disregarded for purposes of diversity jurisdiction.

### 3. Atlas Fails to Apply the Proper Analysis to its Diversity Jurisdiction Arguments

Rather than engage with the governing multi-factor test, Atlas conjures up a smokescreen of irrelevant arguments. It first attempts to restrict the analysis to an unduly "narrow" conception of a "sham assignment." Pls.' Br. 15–16. Atlas suggests that there could be no "sham," and thus no ground for setting aside its citizenship in the diversity analysis, unless "each" Covered Person accepted Atlas's Service Terms with a sophisticated understanding of "the legal concept of diversity jurisdiction" and the subjective intent to target "certain data brokers incorporated under the laws of Delaware or New Jersey for the express purpose of destroying this Court's jurisdiction and avoiding federal court." Pls.' Br. at 15.

There is no such requirement, and by focusing solely on the subjective intent of the assignors, Atlas attacks a straw man. Although subjective intent may certainly inform the analysis, the Ninth Circuit has held that "there is no reason to give motive controlling weight in every case." *Attorneys Trust,* 93 F.3d at 596. Ultimately, the jurisdictional significance of an assignment hinges on *"[t]he objective fact of who really is the party in interest."* *Id.* (emphasis added). That "is the most important thing to be determined," *id.*, and as outlined above, the relevant factors

-32-

REDACTED

overwhelmingly show that the Covered Persons—not Atlas—remain the real parties in interest.

Moreover, it is particularly inappropriate to focus on the subjective intent of the Covered Persons because they had no meaningful choice in accepting Atlas's assignment framework: Atlas presented its Service Terms in the form of a contract of adhesion, and did not even bother informing Covered Persons when it unilaterally changed the terms. *See supra* Section II(C)(1). This was a take-it-or-leave-it deal, and to the extent intent could be relevant here, it is Atlas's intent that might shed further light on the assignments' function.

Next, Atlas contends remand is appropriate because the assignments from Covered Persons are lawful under Daniel's Law and were not for the purpose of affecting jurisdiction. Pls.' Br. at 19. This suggestion that a lawful assignment is dispositive of federal jurisdiction was rejected by the Supreme Court in *Kramer*. *See Kramer,* 394 U.S. at 829. There, the Court found an undisputed lawful assignment of interest under Texas law was not dispositive of whether diversity jurisdiction exists because "federal jurisdiction is a matter of federal, not state law. *Id.* Accordingly, Plaintiffs' reliance the legality of the assignments under Daniel's Law is of no consequence to whether federal jurisdiction exists.

Finally, in a bid to distract from *Grassi* and *Attorneys Trust*, Atlas cites a range of inapposite cases. For example, Atlas relies on *Sprint Comm's Co., L.P. v. APCC*

-33-

**REDACTED**

*Servs., Inc.*, 554 U.S. 269 (2008) to argue that "Section 1359 provides only a narrow exception to the rule that assignees are treated as real parties in interest." Pls.' Br. at 15. In the first instance, Atlas ignores that Section 1359 only covers assignments to invoke jurisdiction, not assignments that might destroy jurisdiction. *See Attorneys Trust*, 93 F.3d at 597.

In addition, *Sprint* did not address whether a party's citizenship could be disregarded for purposes of diversity jurisdiction; instead, it addressed whether an assignee had Article III standing to bring collection actions on behalf of a long-distance carrier. *See Sprint*, 554 U.S. at 271 ("The question before us is whether an assignee of a legal claim for money has standing to pursue that claim in federal court."). In fact, the *Sprint* opinion does not mention, let alone analyze, diversity jurisdiction or 28 U.S.C. §1359, as Atlas mistakenly suggests. [16]

---

[16] Atlas also relies on the following holdings which are no help to its arguments: *Med-X Glob., LLC v. Azimuth Risk Sols., LLC,* No. CV 17-13086, 2018 U.S. Dist. LEXIS 144884, *4 (D.N.J. Aug. 27, 2018); *Uriarte v. Outback Steakhouse*, No. CIV.A. 11-897 (JLL), 2011 U.S. Dist. LEXIS 101982, *4 (D.N.J. Sept. 8, 2011); *Auckland v. Rumsey,* No. CIV.A. 94-6571, 1994 U.S. Dist. LEXIS 17425, *2 (E.D. Pa. Dec. 7, 1994). *See* Pls.' Br. at 18. *Med-X Glob., LLC* has nothing to do with whether an assignee's citizenship can be disregarded as part of a diversity jurisdiction analysis; it is an Article III standing case. 2018 U.S. Dist. LEXIS 144884, *4–5. *Uriarte* is a fraudulent joinder case, and there was no assignment at issue. 2011 U.S. Dist. LEXIS 101982, *9–12. *Auckland* did involve a diversity jurisdiction analysis and an assignment, but unlike here, the assignee gave consideration for the assignment, and the assignee did not retain any continued interest in a settlement or judgment. *See* 1994 U.S. Dist. LEXIS 17425, *4.

-34-

REDACTED

In sum, Atlas's analysis and arguments are unsupported, undeveloped and unpersuasive.  For the reasons explained above, when the totality of the circumstances and substance of the purported assignments are examined, they demonstrate the Covered Persons are the real parties in interest, Atlas's citizenship is appropriately disregarded, and diversity jurisdiction exists here.

### B.    CAFA's Mass Action Provision Should be Liberally Construed in Favor of Federal Jurisdiction and Applied to the Instant Actions

The Court not only has complete diversity jurisdiction, but also has the required minimal diversity jurisdiction under CAFA's "mass action" provision (even if Atlas's citizenship is not disregarded as it should be).  Of the Remand Defendants, 29 properly removed on this basis (the "CAFA Removing Defendants").  *See* Stio Decl., Ex. 7.  Congress passed CAFA to "relax" the requirements for federal jurisdiction, meaning that "CAFA's provisions should be read broadly, with a strong preference" that qualifying cases "be heard in a federal court."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014).  To that end, CAFA explicitly expanded federal jurisdiction to include "mass action[s]."  28 U.S.C. § 1332(d)(11).  A CAFA "mass action" is "any civil action . . . in which *monetary relief claims of 100 or more persons are proposed to be tried jointly* on the ground that the plaintiffs' claims involve common questions of law or fact."  28 U.S.C. § 1332(D)(11)(B)(i)

**REDACTED**

(emphasis added).[17]  In other words, "mass actions" under CAFA "are collective actions that utilize large-scale joinder or other consolidation mechanisms rather than class certification pursuant to Rule 23." *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 319 (3d Cir. 2022).

That describes these actions precisely.  Tens of thousands of "assignors" (Covered Persons) purportedly assigned their claims to a common assignee (Atlas), and propose to have them tried jointly by Atlas, which, under "blackletter law," "steps into" their "shoes" and is subject to any otherwise applicable defenses including those "based on where and how the claims may be prosecuted." *Winn-Dixie Stores, Inc. v. E Mushroom Mktg. Corp.*, No. 06-0620, 2020 U.S. Dist. LEXIS 158687, *40 (E.D. Pa. Sept. 1, 2020); *see also Pension Fund-Mid Jersey Trucking Indus.-Loc. 701 v. Omni Funding Grp.*, 731 F. Supp. 161, 170 (D.N.J. 1990) (explaining that an assignee "steps into the shoes of the assignor").  In other words, the litigation-by-mass-assignment device used here by Atlas (and the Covered Persons) is just the sort of "collective action[] that utilize[s] large-scale joinder or

---

[17] A mass action also must satisfy CAFA's minimal diversity, $5,000,000 aggregate amount-in-controversy, and $75,000 individual amount-in controversy requirements, and cannot fall into any statutory exceptions, *see* 28 U.S.C. § 1332(d)(11)(B)(ii),  Plaintiffs do not dispute that these requirements are satisfied. Nor do they dispute that they are proposing to jointly try all of the monetary relief claims asserted in each action or that the claims involve common questions of law or fact.  The only dispute, therefore, is whether there are enough "claims" of enough "persons" to satisfy the "100 or more" requirement for a CAFA mass action.

**REDACTED**

other consolidation mechanisms" covered by CAFA. *Robert D. Mabe, Inc.*, 43 F.4th at 319.[18]

There is ample support to find that these suits are each a mechanism to bring a collective action aggregating thousands of individual claims. Indeed, even Atlas acknowledges that the Covered Persons intentionally "assigned their litigation rights to Atlas *for the purpose of collectively prosecuting* and enforcing Daniel's Law." Pls.' Br. at 33 (emphasis added). The Daniel's Law Complaints plainly seek monetary relief for thousands of separate claims allegedly assigned by the Covered Persons. *See, e.g.*, *Carco* Compl. at ¶ 26, Prayer ¶¶ B, C (alleging that Atlas is suing "as the assignee of the claims of approximately 19,251 individuals" and seeking monetary relief for each claim).[19] And in contemplation of filing these lawsuits, Atlas required the Covered Persons to agree to Service Terms in which Atlas retained the "discretion [to] determine that an efficient method of prosecuting takedown

---

[18] Even if it were a close question whether this litigation qualifies as a collective mass action (it is not), the Third Circuit has advised that CAFA is "best read as ensuring that qualifying mass actions . . . are not being kept from the federal courts." *Robert D. Mabe, Inc.*, 43 F.4th at 323.

[19] "Taking the complaints and what they propose at face value comports with Congress's and the Court's preference for clear jurisdictional lines." *Adams v. 3M Co.*, 65 F.4th 802, 804 (6th Cir. 2023) (denying remand of a CAFA mass action). Atlas expressly seeks to recover on the claims of more than 19,000 people. Taken at "face value," the Court need only look to the number of claims that Plaintiffs expressly alleged in the Daniel's Law Complaints—more than 19,000—to find CAFA mass action jurisdiction.

**REDACTED**

notice enforcement actions is through civil litigation *whereby individual claims are aggregated and prosecuted* by Atlas . . ." and to use assignments of the Covered Persons' claims to achieve "this end."   Stio Decl., Ex. 12 at §4(e)(ii) (emphasis added).  Mass assignment litigation may in fact be more "efficient" than bringing individual claims in separate lawsuits.   But Atlas cannot claim the benefits of efficiency that come with typical class (or mass) actions, while at the same time denying that the actions are in fact collective actions at all.  To the contrary, Atlas's decision, purportedly with the consent of the Covered Persons and in the name of efficiency, to "aggregate" and "prosecute" the "individual claims" of more than 19,000 Covered Persons against each defendant within single complaints rather than in separately filed complaints for each assigned claim, as Atlas (or the Covered Persons) indisputably could have done, places each one of the removed cases squarely within the Court's CAFA jurisdiction.[20]

---

[20] Atlas (or the Covered Persons before alleged assignment) could have filed separate complaints for each assigned claim and properly avoided federal jurisdiction under CAFA.  *See, e.g., Scimone v. Carnival Corp.*, 720 F.3d at 883–84 (11th Cir. 2013) (explaining that courts have repeatedly held "that plaintiffs have the ability to avoid § 1332(d)(11)(B)(i) jurisdiction by filing separate complaints naming less than 100 plaintiffs").   But that is not the course they took.   Instead, because they are proceeding here by single complaints against each defendant to "collectively prosecute" or "aggregate" all of the allegedly assigned claims, this Court must presume that Atlas and the Covered Persons in whose shoes they stand have proposed to try such claims jointly and subjected themselves to CAFA jurisdiction. *See Ramirez v. Vintage Pharms., LLC*, 852 F.3d 324, 330 (3d Cir. 2017) (reversing district court order remanding case to state court and finding federal jurisdiction proper under CAFA, noting that "[w]here a single complaint joins more than 100

REDACTED

Moreover, allowing a corporate litigation vehicle like Atlas to bring the claims of thousands of individuals in a single suit, beyond the reach of CAFA, would invite precisely the kinds of abuses of the judicial system that CAFA was intended to prevent. *Robert D. Mabe, Inc.*, 43 F.4th at 318 ("CAFA's drafters feared that large-scale state litigation — deemed mass actions and brought under non-class joinder and consolidation rules — would evade CAFA's removal provisions simply because [such] litigation was not pursued under class action rules."); *see also* S. Rep. No. 109-14, at 5 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 6 (noting that CAFA "makes it harder for plaintiffs' counsel to 'game the system' by trying to defeat diversity jurisdiction, creates efficiencies in the judicial system by allowing overlapping and 'copycat' cases to be consolidated in a single federal court, [and] places the determination of more interstate class action lawsuits in the proper forum — the federal courts.").

Those concerns are particularly heightened here. For one thing, these cases involve defendants from numerous states, thereby raising substantial interstate concerns, which heavily favors federal jurisdiction.[21] Moreover, any interpretation

---

separate claims involving common questions of law and fact, there is a presumption that those plaintiffs have implicitly proposed a joint trial").

[21] Even Plaintiffs do not seriously argue that these cases should be in state court — rather, they "welcome the opportunity to litigate" their claims "before this Court." Pls.' Br. at 16; *id.* at 15 ("Plaintiffs have no preference between federal court or state court".), 25 ("[Plaintiffs] would readily accept this Court's jurisdiction over the

**REDACTED**

of Daniel's Law here could influence future interpretation of the "federal version of Daniel's Law," as discussed in Plaintiffs' Complaint, making this a case of national importance. *See, e.g.*, *Carco* Compl. at ¶¶ 10–12 (describing the federal Daniel Anderl Judicial Security and Privacy Act).

Accordingly, each of these actions falls well within the Court's broad CAFA mass action jurisdiction and belongs in this federal court because, exactly as required by the statute, and consistently with its purpose, they propose to jointly try the monetary relief claims of over 19,000 Covered Persons in a case of national importance — and no strategic use or amount of mass assignments can change that simple fact.

<ol>
<li>

**Exercising CAFA Jurisdiction over These Cases is Not Precluded by *Hood*, Which is Distinguishable in Every Respect from these Actions**

</li>
</ol>

Though Plaintiffs seek to rely on general language contained in *Miss. Ex. Rel. Hood v. AU Optronics, Corp.*, 571 U.S. 161 (2014), a thorough examination of the posture and reasoning of that case demonstrates that such reliance is misplaced. *Hood* arose in the unique context of a *parens patriae* action brought by the state. 571 U.S. at 166. Such actions are based on the state's "sovereign character," as opposed to vindicating the interests of private parties. *See Alfred L. Snapp & Son,*

_____

Remand Actions[.]"), 44 ("Plaintiffs are content to litigate their claims in either state or federal court.").

REDACTED

*Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600, 600–02 (1982) (contrasting *parens patriae* authority with suits in which the State "may . . . attempt to pursue the interests of a private party, and pursue those interests only for the sake of the real party in interest" in which case "State is no more than a nominal party"); *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 365 (3d Cir. 2015) ("The focus in a *parens patriae* action is on the State, independent of the benefits that might accrue to any particular individual.") (internal quotation marks omitted).  Specifically, the state "as the sole plaintiff" in *Hood* brought "*a claim* for restitution based on injuries suffered by the State's citizens" — a *parens patriae* claim that always belonged to the state alone — against manufacturers of liquid crystal displays who allegedly restricted competition and raised prices in the market.  571 U.S. at 164 (emphasis added).

The Supreme Court held that this *parens patriae* action did not qualify as a mass action under CAFA because "a 'mass action' must involve monetary claims brought by 100 or more persons who propose to try those claims jointly as named plaintiffs." *Id.* at 164.  That holding was a departure from the plain text of the statute, which refers to the claims of "100 or more persons" not "named plaintiffs."  But the Court arrived at this result by reasoning, in *Hood*'s unique *parens patriae* context, that CAFA's "100 or more persons" language did not contemplate "unspecified individuals who have no actual participation in the suit," but instead covered "the

-41-

REDACTED

parties who are proposing to join their claims in a single trial." *Id.* at 169. Thus, *Hood*'s holding was premised on the fact that the state asserted a claim in its own sovereign interest and not on behalf of unnamed real parties in interest who the courts could not identify. *Id.* at 170–72. And because a state cannot bring a *parens patriae* lawsuit to vindicate the purely private interests and claims of its citizens, *see, e.g., Broselow v. Fisher*, 319 F.3d 605, 609 (3d Cir. 2003), the *Hood* court had no reason to consider whether the state "as the sole plaintiff" was actually bringing the "claims of more than 100 persons" as CAFA requires. But Plaintiffs' assertion that *Hood* stands for the "straightforward principle that the term 'plaintiffs' as used in 28 U.S.C. § 1332(11)(B) means exactly what it says" that "courts cannot count the persons who are not named plaintiffs," (Pls.' Br. at 26–27), overlooks the critical distinctions between a *parens patriae* litigation and the current actions.[22]

---

[22] Courts interpreting *Hood* likewise confine its holding to the *parens patriae* context. *See, e.g., Gallagher v. Johnson & Johnson Consumer Companies, Inc.*, 169 F. Supp. 3d 598, 607 (D.N.J. 2016) ("[Hood] decide[d] whether a *suit filed by a State as the sole plaintiff* nevertheless falls within the meaning of 'mass action' because it sought restitution for injuries suffered by the State's citizens.") (emphasis added); *W. Virginia ex rel. McGraw v. Bristol-Myers Squibb Co.*, No. CV 13-160, 2014 U.S. Dist. LEXIS 24026, *2 (D.N.J. Feb. 26, 2014) ("[Hood] essentially held that *when a state brings suit* on behalf of its citizens and it is the only named plaintiff, the suit is not removable under CAFA.") (emphasis added); *Hood ex rel. Mississippi v. Bristol-Myers Squibb Co.*, No. CV 13-5910, 2014 U.S. Dist. LEXIS 114000, *2 (D.N.J. July 22, 2014) ("[In *Hood*,] the Court found that CAFA jurisdiction is generally not appropriate *in parens patriae suits*.") (emphasis added).

**REDACTED**

Here, of course, unlike in *Hood*, where the state asserted a single quasi-sovereign claim on its own behalf that would only inure, at most, indirectly and generally to the benefit of its unnamed citizenry at large, Atlas advances thousands of claims within each action on behalf of specific Covered Persons who could have asserted those claims in their own private lawsuits before the alleged assignments, and who would directly receive the lion's share of any recovery.  Put differently, in bringing each of these actions, Atlas now simply "steps into the shoes" of each specific Covered Person, *see Winn-Dixie Stores, Inc.*, 2020 U.S. Dist. LEXIS 158687, *40, and acts as a collection agent to recover on their behalf.[23]  As multiple courts in this circuit have recognized, this situation is readily distinguished from the *parens patriae* posture of *Hood*.  *See, e.g.*, *Pennsylvania v. Harbour Portfolio Cap., LLC*, No. CV 18-989, 2018 U.S. Dist. LEXIS 194566, *4 (W.D. Pa. Nov. 15, 2018) (explaining that a "paradigmatic counterexample" to a *parens patriae* action "would be a suit in which the state proceeds as a mere collection agent of private parties"); *see also Broselow*, 319 F.3d at 609 (holding that the language of the complaint "demonstrated that the Commonwealth did not proceed under an assignment from Medicaid recipients," but in a *parens patriae* capacity that is "apart from the interest

---

[23] As explained above, *see supra* Sections II(C)(iii) and III(A)(2)(b), Atlas's Service Terms confirm that Atlas is acting as an assignee for collection purposes.  *See also Kramer*, 394 U.S. at 829 (concluding with "little doubt that assignment was for purposes of collection" where assignor retained substantial interest in recovery).

REDACTED

of particular private parties that affects a sufficiently substantial segment of its residents"); *Pennsylvania v. Porter*, 659 F.2d 306, 317 n.15 (3d Cir. 1981) (distinguishing "collection agent" suits from *parens patriae* suits in which the state is the real party in interest"). Thus, because Atlas brings suit to collect on behalf of thousands of identified assignors, unlike the state in *Hood* acting in its *parens patriae* capacity, Atlas is asserting separate and individual claims on behalf of private parties within the mass action provision's meaning of "monetary relief claims of 100 or more persons [that] are proposed to be tried jointly." 28 U.S.C. § 1332(11)(B).

Moreover, *Hood*'s concerns about stretching the mass action provision to include unnamed real parties in interest are simply not present here. *See* Pls.' Br. at 28. Indeed, none of the specific rationales provided by the Court in *Hood* would apply to the far different factual circumstances in these actions. First, the *Hood* Court rejected the "theory that there may be 100 or more unnamed persons who are real parties in interest as beneficiaries to any of the plaintiffs' claims" because it was concerned that CAFA does not refer to "100 or more named or unnamed real parties in interest." 571 U.S. at 168–69. But that is not the jurisdictional argument CAFA Removing Defendants make, nor a relevant concern, here. Instead, the CAFA Removing Defendants respectfully submit that, in each lawsuit, Atlas is the alleged assignee who "steps into the shoes" of more than 100 persons — more than 19,000 known Covered Persons — to aggregate and prosecute their monetary relief claims

-44-

REDACTED

just like in any typical mass action.[24]  Second, the court in *Hood* explained that "it is difficult to imagine how the claims of one set of unnamed individuals could be proposed for joint trial on the grounds that the claims of some completely different group of named plaintiffs share common questions."  *Id.* at 170.  Not so here, where there is just one set of more than 19,000 known Covered Persons whose claims have been aggregated by Atlas for trial against each defendant.  Third, the "unwieldy inquiries" that concerned the Court in *Hood* also are not present here because, unlike the alleged "unnamed real parties in interest" whose individual amounts-in-controversy were difficult to determine in *Hood*, here, all of the Covered Persons are specific, known individuals and Plaintiffs purport to seek statutory and punitive damages for each of them in an amount exceeding $75,000.[25]  *See, e.g.,* Notice of

---

[24] Similarly, the Supreme Court's conclusion in *Hood* that the phrase "100 or more persons" cannot be "unspecified individuals who have no actual participation in the suit might have been sensible in the *parens patriae* context where unnamed citizen beneficiaries were not actually pursuing their own claims in court.  But here, the alleged assignors are specific Covered Persons who are, in fact, participating in the current lawsuit by pursuing their own claims through Atlas to whom they have allegedly assigned those claims *en masse* for collection and to be aggregated in a single trial against each defendant.  *See* Stio Decl., Ex. 12 at ATLAS-REMAND_0000006–07.

[25] Further illustrating the inapplicability of *Hood*, Atlas produced spreadsheets in these cases purporting to identify by name and address the thousands of individuals who assigned their claims to Atlas.  These spreadsheets underscore that, unlike in *Hood*, each of the individual assignors who assigned their claims are known and not simply "unnamed individuals with an interest in the suit . . ." (*see id.* at 171–72).

-45-

**REDACTED**

Removal, No. 1:24-cv-04850-HB, ECF No. 1, ¶ 79 ("Based on a fair reading of the allegations in the Amended Complaint, the amount in controversy exceeds $75,000, exclusive or interests and costs and therefore, satisfies the amount in controversy requirement under 28 U.S.C. § 1332(a)").  Therefore, assessing, for instance, the sufficiency of the amount in controversy for each Covered Person's claims as CAFA's mass action provision might otherwise have required if it were in dispute (which, again, it is not) would not present the same "administrative nightmare" here as in *Hood*.  571 U.S. at 171.

Finally, the Court in *Hood* itself recognized that it had historically rejected the use of assignments to create or destroy diversity because courts could "look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction," such as by "collusively assigning his interest in an action." 571 U.S. at 175 (citing *Kramer,* 394 U.S. at 825–40 (1969)).  Thus, in rejecting application of CAFA to *parens patriae* litigation, the Supreme Court certainly did not conclude, in *Hood*, that CAFA jurisdiction could be circumvented by the use of mass assignments to a single assignee for collection purposes or reject the CAFA Removing Defendants argument here that such lawsuits are in fact mass actions that propose to try to monetary relief claims of 100 or more persons.[26]

---

[26] Plaintiffs' reliance on *Airlines Pilots Ass'n v. Boeing Co*., 613 F. Supp. 3d 975, 978 (N.D. Tex. 2020) (airline seeking damages on behalf of itself and approximately 10,000 pilot members), *Mahoney v. Emerson Elec. Co*., 478 F. Supp. 3d 1051, 1056

REDACTED

## 2.    Even if it is Necessary to Count the Number of "Plaintiffs," the Court Still has CAFA Mass Action Jurisdiction

Although the holding in *Hood* is inapplicable to the unique facts here, if this Court finds it necessary to count the number of "plaintiffs" rather than the number of "monetary relief claims," it still will have CAFA jurisdiction.  First, the Supreme Court (and lower courts) have long treated a single assignee pursuing collection of multiple individual claims as akin to multiple plaintiffs jointly pursuing their independent claims.  For example, in *Waite v. Santa Cruz*, a single plaintiff sued to collect on several municipal bonds and coupons whose "legal title" had been assigned to him "for collection only."  184 U.S. 302, 324 (1902).  The court held that federal courts could not hear his suit because the amount-in-controversy requirement of diversity jurisdiction would not have been satisfied if the bondholders and coupon holders had sued individually.  *See id.* at 328–29; *see also Woodside v. Beckham*, 216 U.S. 117, 121 (1910) (finding the rule set forth in *Waite* is "decisive in this case" and dismissing case for lack of jurisdiction); *Willis v. E. I.*

---

(D. Idaho 2020) (individual acting as representative of the former stockholders, option holders and warrant holders and there was, unlike here, "no indication that Mahoney sought to bring this action in order to defeat federal jurisdiction"), and *Gallagher v. Johnson & Johnson Consumer Companies, Inc.*, 169 F. Supp. 3d 598, 600 (D.N.J. 2016) (involving "[a]ll New Jersey citizens who purchased the Bedtime Products within New Jersey, *not for resale or assignment*") (emphasis added), are of no moment because all of these cases arose outside the novel approach used by Plaintiffs here to assign and aggregate claims *en masse* to circumvent federal jurisdiction.  *See* Pls.' Br. at 29.

**REDACTED**

*Dupont Denemours & Co.*, 171 F.2d 51, 52–53 (10th Cir. 1948) ("Federal courts have also held without exception that a federal court is without jurisdiction in an action by an assignee for collection of claims which, taken separately, are insufficient in jurisdictional amount and which must be added to make up the jurisdictional amount.") (collecting cases); *Birkins v. Seaboard Serv.,* 96 F. Supp. 245, 250 (D.N.J. 1950) ("Under this statute and its predecessors it has been held that a federal court is without jurisdiction in an action by an assignee for the collection of claims which taken separately are insufficient in jurisdictional amount and which must be added to make up the jurisdictional amount."); *Allen v. Clark*, 22 F. Supp. 898, 902 (S.D. Cal. 1938) ("[I]f several claims are assigned for collection only to plaintiff, the amounts of the several claims cannot be added up to satisfy the jurisdictional minimum.") (collecting cases).[27]

---

[27] In this regard, although a *single* plaintiff typically may aggregate as many independent claims as they wish to meet the amount-in-controversy requirement, *see, e.g.*, *Suber v. Kontinental Koaches, Inc.*, 104 F.3d 578, 588 (3d Cir. 1997) ("The general rule is that claims brought by a single plaintiff against a single defendant can be aggregated when calculating the amount in controversy, regardless of whether the claims are related to each other."), a single assignee for collection is treated differently and courts apply the well-settled rule that *multiple* plaintiffs may not aggregate separate and independent claims for jurisdictional purposes, *see e.g.*, *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 292 (1973) (reaffirming longstanding rule that claims of multiple parties, when separate and distinct, cannot be aggregated for jurisdictional amount-in-controversy purposes).

REDACTED

*Waite* and its progeny recognize that individual assignors' claims, when transferred to an assignee like Atlas for collection purposes, still maintain independent jurisdictional significance. While the cases discussed above prevented plaintiffs in those actions from *manufacturing* federal jurisdiction by using mass assignments, the same logic should apply to prevent plaintiffs, like Atlas here, from *destroying* federal jurisdiction by use of mass assignments. Indeed, just like in the above cases where, to prevent plaintiffs from evading a jurisdictional statute, the courts considered whether each individual assignor could meet the amount in controversy independently, this Court must consider the citizenship and claims of each individual assignor in assessing diversity of citizenship as if each were a separate, named plaintiff. *See Waite*, 184 U.S. at 302; *Woodside,* 216 U.S. at 117; *Willis,* 171 F.2d at 52–53; *Birkins,* 96 F. Supp. at 250; *Allen,* 22 F. Supp. at 902. Allowing Plaintiffs to evade the reach of CAFA's mass action provision would be particularly unwarranted here because Congress included the mass action provision as a necessary "backstop" to ensure that CAFA jurisdiction would apply to what are, at bottom, collective actions, just like these. *See Hood*, 571 U.S. at 173; *see also Kramer*, 394 U.S. at 829 (rejecting use of assignments to thwart "the very thing that Congress intended to prevent . . .").[28]

---

[28] Notably, this line of cases giving assignors' claims independent jurisdictional significance when brought in a mass collection action by a single assignee is fully consistent with the additional requirement in Section 1332(d)(11)(B)(i) of CAFA's

**REDACTED**

Second, Atlas is a "named plaintiff" in this case, 19,000+ times over, and only has standing to sue (if at all) in its capacity as the assignee for each of those Assignors. *Vermont Agency of Nat. Res. V. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("[T]he assignee of a claim has standing to assert the injury in fact suffered by the assignor.").  In other words, Atlas here is actually "Atlas, as assignee of Assignor No. 1," "Atlas, as assignee of Assignor No. 2," and so on, through "Atlas, as assignee of Assignor No. 19,251."  Thus, even under *Hood*'s restrictive limitation of the phrase "claims of 100 or more persons" to "100 or more [named plaintiffs]," the Complaints here still assert "monetary relief claims of 100 or more" named plaintiffs.

Moreover, it would exalt form over substance for the Court to conclude that Atlas's strategic decision not to identify each Covered Person assignor by name in the caption to the complaints somehow means that Atlas, which "steps into each of their shoes" and sues as their assignee, is proposing to try fewer than 100 persons' claims in each case.  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 588 (2013) (rejecting effort to "exalt form over substance," which would "run directly counter to CAFA's primary objective"); *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d

mass action provision that the court may retain jurisdiction only over those claims for which the traditional diversity jurisdiction amount-in-controversy requirement is met, but again Plaintiffs do not dispute that the individual amounts in controversy are sufficient.

**REDACTED**

759, 762 (7th Cir. 2008) ("The question is not whether 100 or more plaintiffs answer a roll call in court, but whether the 'claims' advanced by 100 or more persons are proposed to be tried jointly.") (emphasis added); Wright & Miller, 5A Fed Prac. & Proc. Civ. § 1321 (4th ed.) ("[T]he caption is not determinative as to the identity of the parties to the action . . . .").

In sum, the weight of authority therefore confirms that in this mass assignment context, and for purposes of CAFA mass action jurisdiction, where Atlas is suing as assignee for collection purposes only, each assignor's claim should be given separate and independent jurisdictional significance, and Atlas should be found to be bringing the claims of more than 100 persons (or plaintiffs) and proposing them for joint trial.

## IV.   CONCLUSION

Based upon the foregoing, the Court has subject matter jurisdiction over the above captioned matters and should deny Plaintiffs' Consolidated Motion for Remand.

Dated:  September 9, 2024          **TROUTMAN PEPPER
                                    HAMILTON SANDERS LLP**


                                    _/s/ Angelo A. Stio_
                                    Angelo A. Stio III
                                    Melissa A. Chuderewicz
                                    Stephanie L.  Jonaitis
                                    Suite 400, 301 Carnegie Center
                                    Princeton, NJ 08540-6227
                                    Telephone: (609) 951-4125
                                    Email:  Angelo.Stio@troutman.com

**REDACTED**

Melissa.Chuderewicz@troutman.com
Stephanie.Jonaitis@troutman.com

*Attorneys for Acxiom LLC, AtData LLC,*
*Carco Group Inc., CoreLogic, Inc.,*
*Enformion, LLC, Enformion Holdco Inc.,*
*Intellicorp Records, Inc., Red Violet, Inc.,*
*and Remine Inc.*

Dated: September 9, 2024            **CARLTON FIELDS**

*/s/ Michael T. Hensley*
Michael T. Hensley Jorkeell Echeverria 180
Park Avenue, Suite 106 Florham Park, New
Jersey 07932 Tel: 973.828.2613 Fax:
212.430.5501 MHensley@carltonfields.com
JEcheverria@carltonfields.com

**PARKER POE ADAMS & BERNSTEIN
LLP**

Sarah F. Hutchins (*pro hac vice*)
Corri A. Hopkins (*pro hac vice*)
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Tel: 704.335.6639
sarahhutchins@parkerpoe.com
corrihopkins@parkerpoe.com

*Attorneys for Defendant Blackbaud, Inc.*

**REDACTED**

Dated: September 9, 2024                **VEDDER PRICE P.C.**

*/s/ Blaine C. Kimrey*

Blaine C. Kimrey (*pro hac vice*)
bkimrey@vedderprice.com
Bryan K. Clark (*pro hac vice*)
bclark@vedderprice.com
222 N. LaSalle Street
Chicago, IL 60601
T: +1 312 609 7500

Jean A. Occhiogrosso
jocchiogrosso@vedderprice.com
Vedder Price P.C.
1633 Broadway, 31st Floor
New York, New York 10019
T: +1 212 407 7700
F: +1 212 407 7799

*Attorneys for Defendant Whitepages, Inc.*

Dated: September 9, 2024                **VEDDER PRICE P.C.**

*/s/ Blaine C . Kimrey*

Blaine C. Kimrey (*pro hac vice*)
bkimrey@vedderprice.com
Bryan K. Clark (*pro hac vice*)
bclark@vedderprice.com
222 N. LaSalle Street
Chicago, IL 60601
T: +1 312 609 7500

Jean A. Occhiogrosso
jocchiogrosso@vedderprice.com
Vedder Price P.C.
1633 Broadway, 31st Floor
New York, New York 10019
T: +1 212 407 7700
F: +1 212 407 7799

*Attorneys for Defendant Hiya, Inc.*

-53-

**REDACTED**

Dated: September 9, 2024        **DENTONS US LLP**

       /s/ *Stephen M. Turner*

       Stephen M. Turner, Esq.
       DENTONS US LLP
       101 JFK Parkway, 4th Floor
       Short Hills, NJ 07078
       Telephone: (973) 912-7146
       Email:  stephen.turner@dentons.com

       Bety Javidzad, Esq. (*pro hac vice*)
       DENTONS US LLP
       601 South Figueroa Street, Suite 2500
       Los Angeles, CA 90017
       Telephone: (213) 243-6115
       Email: bety.javidzad@dentons.com

       *Attorneys for Defendant Commercial Real Estate Exchange, Inc.*

Dated: September 9, 2024        **ORRICK, HERRINGTON & SUTCLIFFE LLP**

       /s/ *Camille Joanne Rosca*

       Camille Joanne Rosca
       ORRICK, HERRINGTON & SUTCLIFFE LLP
       51 West 52nd Street
       New York, NY 10019-6142 Telephone: +1 212 506 5000
       Email: crosca@orrick.com

       *Attorneys for Defendant TWILIO INC.*

**REDACTED**

Dated: September 9, 2024

**CLARK HILL PLC**

*/s/ Myriah V. Jaworski*

Myriah V. Jaworski (*pro hac vice*) Chirag H.
Patel (*pro hac vice*)
Steven Richman, Esq.
210 Carnegie Center, Suite 102 Princeton,
NJ 08540 (609) 785-2911
Email:        mjaworski@clarkhill.com
              cpatel@clarkhill.com
              srichman@clarkhill.com

*Attorneys for Defendant 6sense Insights,
Inc.*

Dated: September 9, 2024

**LATHAM & WATKINS LLP**

*/s/ Kevin M. McDonough*

Kevin M. McDonough (ID:
41892005)
Serrin Turner (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of Americas New York, NY
10020 Telephone: (212) 906-1200
Email:        kevin.mcdonough@lw.com
              serrin.turner@lw.com

Bradley M. Baglien (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304 Telephone:
(202) 637-2200
Email: bradley.baglien@lw.com

*Attorneys for Defendants LightBox Parent,
L.P. and LightBox Holdings, L.P.*

-55-

**REDACTED**

Dated: September 9, 2024

**CLARK HILL PLC**

*/s/ Myriah V. Jaworski*

Myriah V. Jaworski (*pro hac vice*) Chirag H. Patel (*pro hac vice*)
Steven Richman, Esq.
210 Carnegie Center, Suite 102
Princeton, NJ 08540
(609) 785-2911
Email:       mjaworski@clarkhill.com
              cpatel@clarkhill.com
              srichman@clarkhill.com

*Attorneys for Defendant Search Quarry LLC*

Dated: September 9, 2024

**LATHAM & WATKINS LLP**

/s/ *Kevin M. McDonough*

Kevin M. McDonough (ID: 41892005)
Serrin Turner (*pro hac vice*) LATHAM &
WATKINS LLP
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email:       kevin.mcdonough@lw.com
              serrin.turner@lw.com

Bradley M. Baglien (pro hac vice)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Email: bradley.baglien@lw.com

*Attorneys for Defendants CoStar Group, Inc. and CoStar Realty Information, Inc.*

**REDACTED**

Dated: September 9, 2024                    **LATHAM & WATKINS LLP**

/s/ *Kevin M. McDonough*
Kevin M. McDonough (ID: 41892005)
Serrin Turner (*pro hac vice*) LATHAM &
WATKINS LLP
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email:        kevin.mcdonough@lw.com
              serrin.turner@lw.com

Jennifer C. Archie (*pro hac vice*) Bradley M.
Baglien (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Email:        jennifer.archie@lw.com
              bradley.baglien@lw.com

Robert C. Collins (*pro hac vice*) LATHAM
& WATKINS LLP
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: robert.collins@lw.com

*Attorneys for Defendants Oracle*
*International Corporation, Oracle America,*
*Incorporated, and Oracle Corporation*

**REDACTED**

Dated: September 9, 2024          **KELLEY DRYE & WARREN LLP**

*/s/ Lauri A. Mazzuchetti*

Lauri A. Mazzuchetti
Whitney M. Smith
Aaron J. Gold KELLEY DRYE &
WARREN LLC
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Tel: (973) 503-5900
Fax: (973) 503-5950
lmazzuchetti@kelleydrye.com
wsmith@kelleydrye.com
agold@kelleydrye.com

*Counsel for Defendant RE/MAX, LLC*

Dated: September 9, 2024          **FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Ross A. Lewin*

Ross A. Lewin
Faegre Drinker Biddle & Reath LLP
105 College Road East
Princeton, New Jersey 08542

Kevin DeMaio
600 Campus Drive
Florham Park, New Jersey 07932
ross.lewin@faegredrinker.com
kevin.demaio@faegredrinker.com

**HARRISON LAW LLC**
Rachel B. Niewoehner *(pro hac vice)*
Katherine A.G. Sobiech *(pro hac vice)*
141 West Jackson Boulevard,
Suite 2055
Chicago, Illinois 60604
(312) 638-8776

-58-

REDACTED

*Attorneys for Defendants Epsilon Data Management, LLC, Conversant LLC, and Citrus Ad International, Inc.*

Dated: September 9, 2024

**STARR, GERN, DAVISON & RUBIN, P.C.**

*/s/ Richard T. Welch*

Richard T. Welch, Esq. (032982006)
Ronald L. Davison, Esq. (266481971)
Starr, Gern, Davison & Rubin, P.C.
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640
Tel: 973.403.9200
rwelch@starrgern.com
rdavison@starrgern.com

**ZWILLGEN PLLC**

Jacob Sommer, Esq.
1900 M. Street NW, Suite 250
Washington, DC 20036
Tel: 202.706.5205
jake@zwillgen.com
(Admitted Pro Hac Vice)

Sudhir Rao, Esq.
183 Madison Avenue, Suite 1504
New York, NY 10016
Tel: 646.362.5590
Sudhir.Rao@zwillgen.com
(Admitted Pro Hac Vice)

*Attorneys for Defendant People Data Labs, Inc.*

REDACTED

Dated: September 9, 2024

**GORDON, REES, SCULLY & MANSUKHANI LLP**

*/s/ Douglas Motzenbecker*
Douglas Motzenbecker, Esq.
Joseph Salvo, Esq. (Admitted Pro Hac Vice)
John Mills, Esq. (Admitted Pro Hac Vice)
Bianca Evans, Esq. (pro hac vice)
1 Battery Park Plaza Suite 2801
New York, NY 10004
Telephone: (212) 453-0725
Facsimile: (212) 269-5505
dmotzenbecker@grsm.com
jsalvo@grsm.com
jtmills@grsm.com
bevans@grsm.com

*Attorneys for Defendant Claritas LLC*

Dated: September 9, 2024

**TRESSLER LLP**

*/s/ Timothy M.. Jabbour*
Timothy M. Jabbour (ID:TJ5611)
George Z. Twill (ID: 275292018)
Tressler LLP
163 Madison Avenue, Suite 404
Morristown, NJ 07960
973-848-2901
tjabbour@tresslerllp.com
gtwill@tresslerllp.com

Gregory C. Scaglione (pro hac vice)
Timothy Hutchinson (pro hac vice)
Koley Jessen P.C., L.L.O.
1125 S. 103rd St., Suite 800
Omaha, NE 68124
531-444-0644
Greg.Scaglione@koleyjessen.com

-60-

**REDACTED**

Tim.Hutchinson@koleyjessen.com

*Attorneys for Defendant Data Axle, Inc.*

Dated: September 9, 2024

**GORDON, REES, SCULLY & MANSUKHANI LLP**

*/s/ Douglas Motzenbecker*
Douglas Motzenbecker, Esq.
Joseph Salvo, Esq. (*pro hac vice forthcoming*)
John Mills, Esq. (*pro hac vice forthcoming*)
Bianca Evans, Esq. (pro hac vice)
1 Battery Park Plaza Suite 2801
New York, NY 10004
Telephone: (212) 453-0725
Facsimile: (212) 269-5505
dmotzenbecker@grsm.com
jsalvo@grsm.com
jtmills@grsm.com
bevans@grsm.com

*Attorneys for Defendant Lusha Systems Inc.*

Dated: September 9, 2024

**CARLTON FIELDS, P.A.**

*/s/ Douglas Motzenbecker*
Michael D. Margulies (No. 030412008)
CARLTON FIELDS, P.A.
180 Park Avenue, Suite 106
Florham Park, NJ 07932
Telephone: (973) 828-2600
Email: mmargulies@carltonfields.com
*Attorneys for Defendant Teltech Systems, Inc.*

**REDACTED**

Dated: September 9, 2024

**LATHAM & WATKINS LLP**

*/s/ Kevin M. McDonough*
Kevin M. McDonough (ID: 41892005)
LATHAM & WATKINS LLP
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com

Jennifer C. Archie (*pro hac vice*) Bradley M. Baglien (*pro hac vice*) LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Email:        jennifer.archie@lw.com
              bradley.baglien@lw.com

Robert C. Collins (*pro hac vice*)
LATHAM & WATKINS LLP
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: robert.collins@lw.com

*Attorneys for Defendants PeopleConnect, Inc., PeopleConnect Holdings, Inc., Intelius, LLC, and PeopleConnect Intermediate, LLC*

**REDACTED**

Dated: September 9, 2024

**McCARTER & ENGLISH, LLP**

*/s/ Scott S. Christie*
Scott S. Christie (ID: 37901989)
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Email: schristie@mccarter.com

Curtis B. Leitner
McCARTER & ENGLISH, LLP
Worldwide Plaza
825 Eighth Ave., 31st Floor
New York, NY 10019
Telephone: (212) 609-6800
Email: cleitner@mccarter.com
*Attorneys for Defendants Defendants Black
Knight Technologies, LLC and Black Knight,
Inc.*

Dated: September 9, 2024

**BALLARD SPAHR LLP**

*/s/ Marcel S. Pratt*
Marcel S. Pratt
Michael Berry (appearance forthcoming)
John W. Scott
Jordan Meyer
1735 Market Street, Fl. 51
Philadelphia, PA 19103-7599
215.864.8605
prattm@ballardspahr.com
berrym@ballardspahr.com
scottj@ballardspahr.com
meyerjl@ballardspahr.com

*Attorneys for Defendants Thomson Reuters
Corporation, Thomson Reuters Holdings
Inc., Thomson Reuters Canada Limited, and
Thomson Reuters Applications Inc.*

**REDACTED**

Dated: September 9, 2024            **BALLARD SPAHR LLP**

*/s/ Alan Schoenfeld*
Alan Schoenfeld (New Jersey Bar No. 285532018)
Marissa M. Wenzel (*pro hac vice*)
Todd Clayton (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800 (phone)
(212) 230-8888 (fax)
alan.schoenfeld@wilmerhale.com
marissa.wenzel@wilmerhale.com
todd.clayton@wilmerhale.com

Christopher Davies (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000 (phone)
(202) 663-6363 (fax)
christopher.davies@wilmerhale.com

*Attorneys for Defendant Choreograph LLC*

Dated: September 9, 2024            **BUCHANAN INGERSOLL & ROONEY P.C.**

*/s/ Samantha L. Southall*
Samantha L. Southall (admitted pro hac vice)
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555

-64-

**REDACTED**

215 665 3884 (o)
samantha.southall@bipc.com

Melissa J. Bayly
550 Broad Street, Suite 810
Newark, New Jersey 07102
973 424 5604 (o)
melissa.bayly@bipc.com

*Attorneys for Defendant Transunion LLC*

Dated: September 9, 2024          **KING & SPALDING LLP**

*/s/ Thomas J. Scrivo*
Thomas J. Scrivo
King & Spalding LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036-2601
Tel: 212-556-2100
Fax: 212-556-2222
Email: tscrivo@kslaw.com

Zachary A. McEntyre*
John C. Toro*
Charles G. Spalding, Jr.*
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA 30309
Tel.: (404) 572-4600
Fax: (404) 572-5100
Email: zmcentyre@kslaw.com
Email: jtoro@kslaw.com
Email: cspalding@kslaw.com
*Admitted Pro Hac Vice*

*Counsel for Equifax Inc. and Kount Inc.*

**REDACTED**

Dated: September 9, 2024                    **SILLS CUMMIS & GROSS P.C.**

*/s/ Joshua N. Howley*
Joshua N. Howley
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102
(973) 643-7000
jhowley@sillscummis.com

Andrew J. Pincus*
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
apincus@mayerbrown.com

John Nadolenco
Daniel D. Queen
MAYER BROWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 229-9500
jnadolenco@mayerbrown.com

Benjamin D. Bright*
Jonathan D. Stahl*
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
bbright@mayerbrown.com
*pro hac vice

*Attorneys for Defendant Spokeo, Inc.*

REDACTED

Dated: September 9, 2024

**McCARTER & ENGLISH, LLP**

*/s/ Scott S. Christie* .
Scott S. Christie (ID: 37901989)
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Email: schristie@mccarter.com

*Attorneys for Defendant Telnyx LLC*

Dated: September 9, 2024

**MCELROY, DEUTSCH,
MULVANEY, & CARPENTER, LLP**

*/s/ Nicholas K. Lagemann*
Nicholas K. Lagemann
MCELROY, DEUTSCH,
MULVANEY, & CARPENTER, LLP
1300 Mount Kemble Avenue
Morristown, NJ 07962
Tel: (973) 425-8210
NLagemann@mdmc-law.com

Jacquelyn Fradette (*pro hac vice*)
Alan Charles Raul (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
(202) 736-8822
jfradette@sidley.com
araul@sidley.com

Tyler J. Domino (*pro hac vice*)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
tdomino@sidley.com

-67-

REDACTED

*Attorneys for Defendants MyHeritage Ltd. and MyHeritage (USA), Inc.*

Dated: September 9, 2024      **DENTONS US LLP**

*/s/ Stephen M. Turner*

Stephen M. Turner, Esq.
DENTONS US LLP
101 JFK Parkway, 4th Floor
Short Hills, NJ 07078
Telephone: (973) 912-7146
Email: stephen.turner@dentons.com

Kristen C. Rodriguez, Esq. (admitted pro hac vice)
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 398-5280
Email: kristen.rodriguez@dentons.com

*Attorneys for Defendant Wiland, Inc.*

Dated: September 9, 2024      **SAUL EWING LLP**

*/s/ William C. Baton*

William C. Baton
Sarah A. Sullivan
Alexander L. Callo
SAUL EWING LLP
One Riverfront Plaza
1037 Raymond Blvd.
Newark, NJ 07102-5426
(973) 286-6700
wbaton@saul.com
sarah.sullivan@saul.com
alexander.callo@saul.com

-68-

REDACTED

**COOLEY LLP**
Matthew D. Brown (admitted pro hac vice)
Bethany C. Lobo (admitted pro hac vice)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
E-mail: brownmd@cooley.com
E-mail: blobo@cooley.com

Rebecca L. Tarneja (admitted pro hac vice)
355 S. Grand Avenue, Suite 900
Los Angeles, CA 90071
Telephone: (213) 561-3250
E-mail: rtarneja@cooley.com

*Attorneys for Defendants Valassis Digital Corp. and Valassis Communications, Inc.*

Dated: September 9, 2024    **MANATT, PHELPS & PHILLIPS, LLP**

*/s/ Kenneth D. Friedman*
Kenneth D. Friedman
7 Times Square
New York, New York 10036
(212) 790-4500
kfriedman@manatt.com

Kareem A. Salem (pro hac vice)
Brandon Reilly (pro hac vice)
662 Encinitas Blvd., Suite 216
Encinitas, CA 92024
(619) 205-8520
ksalem@manatt.com
breilly@manatt.com

*Attorneys for Defendant Vericast Corp.*

**REDACTED**

Dated: September 9, 2024

**SAUL EWING LLP**

*/s/ William C. Baton*

William C. Baton
Sarah A. Sullivan
Alexander L. Callo
SAUL EWING LLP
One Riverfront Plaza
1037 Raymond Blvd.
Newark, NJ 07102-5426
(973) 286-6700
wbaton@saul.com
sarah.sullivan@saul.com

**COOLEY LLP**

Matthew D. Brown (admitted pro hac vice)
Bethany C. Lobo (admitted pro hac vice)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
E-mail: brownmd@cooley.com
E-mail: blobo@cooley.com

Rebecca L. Tarneja (admitted pro hac vice)
355 S. Grand Avenue, Suite 900
Los Angeles, CA 90071
Telephone: (213) 561-3250
E-mail: rtarneja@cooley.com

*Attorneys for Defendants Precisely*
*Holdings, LLC, Precisely Software Inc., and*
*Precisely Software Ltd.*

**REDACTED**

Dated: September 9, 2024

**GREENBERG TRAURIG, LLP**

*/s/ Arron Van. Nostrand*

Aaron Van Nostrand
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
(973) 360-7900

*Attorneys for Defendant Outside Interactive, Inc.*

Dated: September 9, 2024

**MCCARTER & ENGLISH LLP**

*/s/ Christopher A. Rojao*

Ryan A. Savercool
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
crojao@mccarter.com
rsavercool@mccarter.com

**HOGAN LOVELLS US LLP**
*/s/ Jon M. Talotta*

Jon M. Talotta (admitted pro hac vice)
8350 Broad Street (Boro Tower)
Tysons, VA 22102
Tel: 703.610.6100
jon.talotta@hoganlovells.com
David M. Cheifetz (admitted pro hac vice)
Elizabeth C. Milburn (pro hac vice to be filed)
390 Madison Avenue
New York, New York 10017
Tel: 212.918.3000
david.cheifetz@hoganlovells.com
tina.milburn@hoganlovells.com

REDACTED

*Attorneys for Defendants in 1:24-cv-4850-HB, The Lifetime Value Co. LLC, BeenVerified, LLC, NeighborWho LLC, The NumberGuru, LLC, PeopleLooker LLC, PeopleSmart LLC, Ownerly, LLC*

Dated: September 9, 2024

**MONTGOMERY MCCRACKEN**

**WALKER & RHOADS LLP**

*/s/ Alexandra S. Jacobs*

Alexandra S. Jacobs
John Papianou
457 Haddonfield Road, Suite 600
Cherry Hill, NJ 08002
856.488.7746
ajacobs@mmwr.com
jpapianou@mmwr.com

**HUDSON COOK LLP**

Rebecca E. Kuehn (pro hac vice forthcoming)
Robert D. Tilley (pro hac vice forthcoming)
Jason F. Esteves (pro hac vice forthcoming)
1909 K Street, NW, 4th Floor
Washington, DC 20006
202.327.9710 / 202.327.9711
rkuehn@hudco.com
rtilley@hudco.com
jesteves@hudco.com

*Attorneys for Defendant, First American Financial Corporation*

**REDACTED**

Dated: September 9, 2024                    **LOWENSTEIN SANDLER LLP**

*/s/ A. Matthew Boxer*
A. Matthew Boxer
Gavin J. Rooney
Rasmeet K. Chahil
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
mboxer@lowenstein.com
grooney@lowenstein.com
rchahil@lowenstein.com

*Attorneys for Defendants LexisNexis Risk
Data Management, LLC and RELX Inc.*

-73-